**Marc BUCHANAN, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2011–CA–000639–MR.**

Court of Appeals of Kentucky.

Sept. 21, 2012.

Discretionary Review Denied by Supreme Court June 12, 2013.

Thomas M. Ransdell (argued), Assistant Public Advocate, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky and Julie Scott Jernigan (argued), Assistant Attorney General, Frankfort, KY, for appellee.

Before KELLER, TAYLOR and VANMETER, Judges.

## OPINION

KELLER, Judge:

Marc Buchanan (Buchanan) appeals from a judgment of the Fayette Circuit Court convicting him of first-degree assault, first-degree fleeing or evading police, and tampering with physical evidence and sentencing him to a total of fifteen years' imprisonment. For the following reasons, we affirm.

## FACTS

The following facts are not in dispute. On April 13, 2009, Luis Villanueva (Villanueva) got off work at 1:30 a.m. and went home to his apartment at the Matador Apartments. As he entered the apartment building, he saw two men. One of the men opened the door for Villanueva but kept his left hand in his coat pocket. Villanueva went up to his apartment, looked out his window, and saw the two men get into a car and back it into a parking spot by the dumpster. Because he was suspicious of the two men, Villanueva called 911.

Shortly after Villanueva called 911, Officer Nick Whitcomb (Officer Whitcomb) of the Lexington Metropolitan Police Department arrived at the Matador Apartments. Because Villanueva observed Officer Whitcomb drive past the vehicle with the two men in it, he called 911 again to give the officer the precise location of the men. After receiving that information from the dispatcher, Officer Whitcomb pulled his police cruiser in front of the vehicle with the two men in it and shined his spotlight into the car. Officer Whitcomb approached the vehicle and saw two men in the car with their seats reclined.

Officer Whitcomb ordered the passenger, who was later identified as Buchanan, to step out of the vehicle. After being questioned by Officer Whitcomb, Buchanan stated that he and the driver, Jesse Mayberry (Mayberry), had been asleep in the car. When Officer Whitcomb began to pat down Buchanan for weapons, Mayberry stepped out of the car and began to come around the vehicle. While Officer Whitcomb was instructing Mayberry to get back into the car, Buchanan pushed himself free from Officer Whitcomb and dove through the vehicle to the other side. Both Buchanan and Mayberry started to run away, and Officer Whitcomb chased them.

At some point, Buchanan and Mayberry ran in different directions, and Officer Whitcomb chased Buchanan into a field. During the pursuit, Buchanan pulled out a gun and shot it approximately three or four times. Because a bullet hit Officer Whitcomb in the right shoulder, he was unable to continue chasing Buchanan. Thus, Buchanan escaped.

The police waited until daylight to conduct a thorough search of the field where Officer Whitcomb was shot, and they found a revolver inside the doorway of a nearby building that was under construction. The bullet that was removed from Officer Whitcomb's shoulder was eventually identified as being fired from the revolver.

Buchanan was subsequently indicted for attempted murder, first-degree assault, first-degree fleeing or evading police, and possession of a handgun by a convicted felon. A second indictment charged Buchanan with tampering with physical evidence. Ultimately, the possession of a handgun by a convicted felon charge was severed after the trial court determined it could not be tried with the other charges. In exchange for his testimony against Buchanan, Mayberry entered into a plea agreement with the Commonwealth.

After a five-day trial, the jury returned a verdict finding Buchanan guilty of first-degree assault, first-degree fleeing or evading police, and tampering with physical evidence. Consistent with the jury's recommendation, the trial court sentenced Buchanan to fifteen years' imprisonment. This appeal followed.

Additional facts are set forth as necessary below.

## STANDARDS OF REVIEW

The issues raised on appeal have differing standards of review. Therefore, we set forth the appropriate standard of review as we address each issue.

## ANALYSIS

### 1. Jury Verdict

The jury deliberated for approximately six hours. As to the charge of first-degree assault, the trial judge announced that the verdict was not guilty. When the trial judge asked if either party wanted to examine the verdict, two jurors indicated that the verdict that was announced was incorrect. The trial judge then reexamined the verdict forms and asked the ju-

rors if the verdict announced was correct. As correctly noted by Buchanan, the jurors' response is unintelligible. The trial court then allowed the attorneys to look at the verdict form, and then asked the foreperson to approach the bench and look at the verdict to see if he filled it out correctly. The foreperson indicated that the verdict was incorrect and that the jury had found Buchanan guilty of first-degree assault.

The trial judge then told the jury that he was going to give them a red pen and send them back to the jury room to deliberate and to make sure the verdict forms reflected their intended verdict. Less than two minutes later, the jury returned with an amended verdict form finding Buchanan guilty of first-degree assault. The trial judge then polled the jury, and the jurors all indicated that the verdict was correct.

The trial judge noticed the jury had not marked through the original verdict finding Buchanan not guilty of first-degree assault. Therefore, in open court, the foreperson marked through the original verdict of not guilty. Later, the trial judge noticed that the foreperson had not initialed any of the changes he made to the verdict form; therefore, the trial judge asked the foreperson to initial the verdict form in open court.

Buchanan argues that it was improper to allow the jury to alter the verdict form. Because this claim is not preserved for appellate review, Buchanan asks this Court to review this claim for palpable error under Kentucky Rule(s) of Criminal Procedure (RCr) 10.26.

■ RCr 10.26 provides that:

A palpable error which affects the substantial rights of a party may be considered ... by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

Because an improper alteration of a jury verdict certainly implicates manifest injustice, we examine the merits of the issue.

In support of his argument, Buchanan cites to *Jackson v. Commonwealth,* 303 Ky. 25, 27, 196 S.W.2d 865 (1946). In that case, the defendant was charged with breaking into a warehouse and faced a penalty ranging from one to five years' imprisonment. After a jury returned a verdict fixing the penalty at one year imprisonment,

the Commonwealth's Attorney stated in open court that unless the jury should give appellant the maximum he would set the verdict aside and call another jury to try the case; that he had other charges against appellant which he would file away if the jury should return a verdict of five years' imprisonment. ... [T]he jury was 'directed' by the attorney and 'permitted' by the Court to return to their room and 'reconsider their verdict.' This they did, and made return as follows: 'We the jury, after hearing other charges brought to our knowledge against the defendant by two Commonwealth's Attorneys, do reconsider our verdict and fix the penalty at five years in the penitentiary.'

*Id.* at 865. The Court determined that the trial court could not require the jury to reconsider its verdict, other than for the purpose of formal correction, after it had deliberated, returned, and read a verdict correct in form and substance. *Id.* at 866.

We believe that this case is distinguishable from *Jackson* because this jury was not directed to "reconsider" its verdict. In this case, the jurors realized there was a mistake in the verdict. After notifying the

trial court of that mistake, the trial court permitted the jury to correct the mistake; it did not direct the jury to reconsider the verdict. Thus, we do not believe that *Jackson* is dispositive.

Instead, we believe this case is similar to *Kaminski v. Bremner, Inc.*, 281 S.W.3d 298 (Ky.App.2009), and *Bush v. Commonwealth*, 839 S.W.2d 550 (Ky.1992). In *Kaminski*, as soon as the verdict form was handed to the judge, the foreman asked to see the verdict form again because he believed he checked the wrong section. Thus, in open court, the foreman altered the verdict form. The altered form reflected a verdict in favor of Bremner. The trial judge then polled the jury. Kaminski's counsel moved for a mistrial arguing the verdict form was irregular on its face because the foreman had changed the form in open court and two jurors appeared confused when asked how they voted. The trial court denied Kaminski's motion for a mistrial; however, it sent the jury back to resume its deliberations with a clean verdict form. 281 S.W.3d at 301–02.

The jury deliberated for approximately two minutes and again returned a verdict in favor of Bremner. The trial court polled the jury again, and the jurors confirmed their votes. Kaminski again moved for a mistrial, which the trial court denied. *Id.* at 303.

In concluding that the trial court did not err in denying Kaminski's motion for a mistrial, this Court noted that "altering a verdict form in open court is not automatic grounds for reversal and a new trial." *Id.* at 304. This Court further concluded that, if it were to reverse and send the matter back for a new trial, it "might be permitting a possible distortion of the true verdict and in effect might be providing Kaminski a second day in court after the matter has been fully litigated and finally decided." *Id.* at 305.

In *Bush*, the jury returned an inconsistent verdict. 839 S.W.2d at 556. This error was not pointed out until after the jury was polled and then recessed for lunch. After being informed of the error, the foreman, without being asked, responded as to the jury's intent. All of the jurors nodded in agreement and the foreman signed the verdict form. In concluding that this procedure was proper, the Supreme Court of Kentucky noted that the "jury may be reassembled at any time to correct a verdict when the defect is obviously one of form." *Id.* (citing *Curry v. Commonwealth*, 406 S.W.2d 733 (Ky. 1966)); *see also Callis v. Owensboro–Ashland Co.*, 551 S.W.2d 806, 808 (Ky.App. 1977) (concluding it was not reversible error for a trial court to recall jurors to correct an inconsistent verdict after being discharged because the error was one of form, not substance).

 As in *Kaminski* and *Bush*, the error in the verdict in this case was one of form. The jurors immediately notified the trial court that the verdict was incorrect and that it did not reflect the jury's intent. Thus, it was proper for the trial court to allow the jury to correct the verdict. Further, based on *Kaminski*, it was proper for the foreperson to alter the verdict in open court.

 Buchanan also argues that the alterations to the jury verdict resulted in a double jeopardy violation. Because it was proper for the jury to correct its verdict, Buchanan was not acquitted of first-degree assault and then subsequently found guilty of that same offense. Therefore, we conclude that Buchanan's double jeopardy argument is without merit.

We further note Buchanan's argument that RCr 9.88 required the trial court to grant a mistrial because the verdict was not unanimous. RCr 9.88 provides that:

When the verdict is announced, either party may require the jury to be polled, which is done by the clerk's or court's asking each juror if it is his or her verdict. If upon the poll, there is not unanimous concurrence, the verdict cannot be received.

As set forth above, after the verdict was read, the jury indicated that the verdict was incorrect. The jury was sent back to the jury room to deliberate and returned with a corrected verdict. The jury was polled, which reflected that the verdict was unanimous. Because the verdict was unanimous, the trial court did not err in accepting it.

### 2. Wanton First–Degree Assault

■ Next, Buchanan argues that it was improper to instruct the jury on both first-degree assault committed through intentional conduct, Kentucky Revised Statute (KRS) 508.010(1)(a), and first-degree assault committed through wanton conduct, KRS 508.010(1)(b). Generally, "[a]lleged errors regarding jury instructions are considered questions of law that we examine under a *de novo* standard of review." *Hamilton v. CSX Transp., Inc.,* 208 S.W.3d 272, 275 (Ky.App.2006) (citing *Reece v. Dixie Warehouse & Cartage Co.,* 188 S.W.3d 440, 449 (Ky.App.2006)).

KRS 508.010(1) provides that a person is guilty of first-degree assault when:

(a) He intentionally causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument; or

(b) Under circumstances manifesting extreme indifference to the value of human life he wantonly engages in conduct which creates a grave risk of death to another and thereby causes serious physical injury to another person.

As noted above, the first-degree assault instruction was a combination instruction which permitted the jury to find Buchanan guilty of first-degree assault committed either through intentional conduct, KRS 508.010(1)(a), or wanton conduct, KRS 508.010(1)(b). Because the jury returned a general verdict simply finding Buchanan guilty of first-degree assault, he argues that it is impossible to know whether the jury believed he was acting intentionally or wantonly. Thus, Buchanan argues he was denied his right to a unanimous verdict.

As stated in *Miller v. Commonwealth,* 77 S.W.3d 566, 573–74 (Ky.2002):

A defendant cannot be convicted of a criminal offense except by a unanimous verdict. We have held that a "combination" instruction permitting a conviction of the same offense under either of two alternative theories does not deprive a defendant of his right to a unanimous verdict if there is evidence to support a conviction under either theory. Otherwise, the verdict cannot be shown to be unanimous, and the conviction must be reversed.

(Citations omitted).

■ Buchanan argues that the evidence in this case proved only an intentional act; therefore, it was error to instruct the jury on wanton first-degree assault.

A person acts wantonly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of vol-

untary intoxication also acts wantonly with respect thereto.

KRS 501.020(3).

Officer Whitcomb testified that, as he chased Buchanan in the field, Buchanan slipped two times. As he was getting up the second time, Buchanan pulled something from his waistband, and he turned and shot toward Officer Whitcomb. We believe that because Officer Whitcomb was chasing Buchanan, a reasonable juror might infer that Buchanan fired the gun not for the purpose of causing serious physical injury to Officer Whitcomb, but only to stop the pursuit. Further, a reasonable juror could infer that, by shooting toward Officer Whitcomb, Buchanan manifested an extreme indifference toward the value of human life and his conduct created a risk that Officer Whitcomb could have been killed. Such conduct was a gross deviation from the standard of conduct a reasonable person would observe in that situation. Thus, there was sufficient evidence to support wanton first-degree assault. Accordingly, Buchanan was not denied a unanimous verdict by the combination instruction.

■ In addition to his argument that the jury was improperly instructed on wanton first-degree assault, Buchanan argues that he was not properly indicted for wanton first-degree assault. We disagree. Count 2 of the indictment provided the following:

> On or about the 13th day of April 2009, in Fayette County, Kentucky, the above named Defendant Marc Buchanan committed the offense of Assault First Degree when he shot Lexington Police Officer Nicholas Whitcomb with a pistol, thereby causing serious physical injury[.]

As set forth in *Wells v. Commonwealth,* 561 S.W.2d 85, 88 (Ky.1978):

KRS 508.010 brings together two distinct culpable mental states (intent and wantonness manifesting extreme indifference to the value of human life) and punishes them equally under specified circumstances. Either mental state will support a conviction of assault in the first degree and punishment for such crime. The legal effect of the alternative conclusions is identical.

Buchanan was indicted for first-degree assault pursuant to KRS 508.010. Because KRS 508.010 includes both intentional and wanton states of mind, Buchanan was on notice that it was within the Commonwealth's discretion to proceed under either or both theories. We are of the opinion that, based on the evidence in this case, the jury could have believed either theory. Thus, the jury instruction for first-degree assault was proper, and no error occurred.

### 3. Motion for Mistrial

Buchanan next argues that the trial court erred in denying his motion for a mistrial after Mayberry testified that he knew Buchanan from prison. We disagree.

On direct examination, the Commonwealth asked Mayberry how he knew Buchanan, and Mayberry replied "we was in prison together." Buchanan moved for a mistrial arguing that the Commonwealth intentionally elicited this testimony. The Commonwealth stated that it did not expect that answer from Mayberry. The trial court ultimately determined that there was no manifest necessity that would require the court to grant a mistrial, and that there was no substantial prejudice. The trial court then admonished the jury by instructing it to forget Mayberry's statement.

Later that day, the Commonwealth approached the bench to supplement the record regarding Buchanan's motion for a

mistrial. Reading from Mayberry's pretrial interview, the Commonwealth noted Mayberry's statement that he met Buchanan in a club and that he only *knew of* Buchanan from prison. At the close of the day's testimony, Buchanan renewed his motion for a mistrial. The court again denied the motion.

■ Mayberry's statement was evidence that Buchanan had previously been arrested for a crime different from the ones for which he was standing trial. As set forth in *Matthews v. Commonwealth*, 163 S.W.3d 11, 17 (Ky.2005):

Evidence of other crimes is generally inadmissible, though such evidence is admissible (1) if offered for a purpose other than proving a person's character in order to show action in conformity therewith, e.g., to prove motive, intent, opportunity, et cetera, or (2) if the evidence is "so inextricably intertwined with other evidence essential to the case...."

Mayberry's statement did not fall under either exception and was therefore inadmissible.

■ Although his statement was inadmissible, we do not believe that the trial court erred in failing to grant a mistrial. As noted in *Matthews:*

We have long held that an admonition is usually sufficient to cure an erroneous admission of evidence, and there is a presumption that the jury will heed such an admonition. A trial court only declares a mistrial if a harmful event is of such magnitude that a litigant would be denied a fair and impartial trial and the prejudicial effect could be removed in no other way. Stated differently, the court must find a manifest, urgent, or real necessity for a mistrial. The trial court has broad discretion in determining when such a necessity exists because the trial judge is "best situated intelligently to make such a decision." The trial court's decision to deny a motion for a mistrial should not be disturbed absent an abuse of discretion.

*Id.*

In *Graves v. Commonwealth*, 17 S.W.3d 858, 865 (Ky.2000), the Supreme Court of Kentucky concluded that an admonition to the jury cures a witness's improper reference to a defendant being a convicted felon. In *Graves*, a witness made a veiled reference to the appellant's prior criminal conviction by saying, "I knew he wasn't supposed to have a gun." The Court noted that the reference was sufficiently oblique that its implications probably escaped the notice of the jury. Nevertheless, the Court also held that even an unambiguous reference would not have necessitated a mistrial because "[t]his type of evidentiary error is easily cured by an admonition to the jury to disregard the testimony." *Id.*

As in *Graves*, the proper remedy in this case was an admonition, which the trial court gave to the jury. "A jury is presumed to follow an admonition to disregard evidence; thus, the admonition cures any error." *Combs v. Commonwealth*, 198 S.W.3d 574, 581 (Ky.2006). Based on *Graves*, we conclude the trial court's refusal to grant a mistrial was not an abuse of discretion.

### 4. Tampering with Physical Evidence

■ Finally, Buchanan argues that he was entitled to a directed verdict on the tampering with physical evidence charge. We disagree.

As set forth in *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991):

On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable

juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

KRS 524.100 provides:

(1) A person is guilty of tampering with physical evidence when, believing that an official proceeding is pending or may be instituted, he:

(a) Destroys, mutilates, conceals, removes or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding[.]

In this case, the gun was discovered in the open doorway of a building that was under construction in the field where Officer Whitcomb was shot. Buchanan argues that because the gun was discovered in the open doorway of the building, there was insufficient evidence that he tampered with physical evidence. Drawing all fair and reasonable inferences from the evidence in favor of the Commonwealth, we conclude that a reasonable juror could believe that, by placing the gun in the doorway of a building as he was fleeing from the scene, Buchanan intended to conceal the gun that could be used in an official proceeding against him. Therefore, we conclude the trial court did not err in denying Buchanan's motion for a directed verdict on the tampering with physical evidence charge.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the Fayette Circuit Court.

ALL CONCUR.