STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPA-
NY, Appellant

v.

Lonnie Dale RIGGS, Appellee

2013–SC–000555–DG

Supreme Court of Kentucky.

RENDERED: MARCH 17, 2016

Counsel for Appellant: David T. Klapheke, Boehl Stopher & Graves, LLP.

Counsel for Appellee: Timothy R. McCarthy, Nutt Law Office.

Counsel for Amicus Curiae, Kentucky Justice Association: Kevin Crosby Burke.

Counsel for Amici Curiae, Insurance Institute of Kentucky, National Association of Mutual Insurance Companies, and Kentucky Defense Counsel: Thomas Frederick Glassman, David V. Kramer.

## OPINION OF THE COURT BY CHIEF JUSTICE MINTON

Following an automobile accident, Lonnie Dale Riggs sued the adverse driver for negligence, but settled the claim for the adverse driver's automobile-liability-insurance policy limits. Before dismissing the suit, Riggs asserted a claim against his own automobile liability insurer, State Farm Mutual Automobile Insurance Company, for underinsured motorist benefits (UIM). Riggs filed his UIM claim three years to the day after the date of the automobile accident. State Farm denied UIM liability because Riggs's insurance policy contained a limitation provision that gave Riggs two years from the date of the accident or date of the last basic reparation benefit (BRB) payment, whichever occurred later, within which to make a UIM claim.

The trial court granted summary judgment for State Farm, but the Court of Appeals reversed the trial court's judgment, holding that the State Farm policy provision limiting the time for making the UIM claim was void because it was unreasonable.

We granted discretionary review to examine the reasonableness of State Farm's limitation provision—a standard provision that tracks nearly verbatim the two-year statute of limitations for tort claims found in Kentucky's Motor Vehicle Reparations Act (KMVRA). The State Farm policy provision, in our view, is not unreasonable—two years is not an unreasonable period of time for an insured to discover whether a tortfeasor is underinsured or uninsured. The decision of the Court of Appeals, therefore, is reversed and judgment of the trial court reinstated.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

Riggs, a city police officer, was involved in an automobile accident while in the line

of duty. As a result of the accident, Riggs suffered severe and permanent bodily injuries, pain and suffering, and lost wages. Riggs received workers' compensation benefits for these injuries. Because of this, Riggs did not, at any point, receive BRBs for his injuries.

Nearly two years after the accident, Riggs filed a personal injury suit against the driver allegedly responsible for the accident. During discovery, Riggs settled with the allegedly negligent driver for his automobile-liability-insurance policy limits.

A few months before the settlement, the trial court permitted Riggs to amend his complaint to add a UIM claim against State Farm, his own insurance carrier. State Farm filed a motion for summary judgment asserting that the explicit terms of Riggs's policy rendered his UIM claim untimely. The provision read:

> 2. Suits Against Us
>
> There is no right of action against us:
>
> . . . .
>
> d. under uninsured motor vehicle coverage and underinsured motor vehicle coverage unless such action is commenced no later than two (2) years after the injury, or death, or the last basic or added reparation payment made by any reparation obligor, whichever later occurs.

The trial court agreed with State Farm and granted summary judgment in its favor. In doing so, the trial court relied on *Pike v. Governmental Employees Ins. Co.,*[1] a Sixth Circuit decision with an analogous policy provision. In that case, the Sixth Circuit found such a provision reasonable and enforceable under our law.

On appeal, the Court of Appeals disagreed with the trial court. The Court of Appeals did not find *Pike* persuasive. In fact, the court held it ran contrary to our law. State Farm's time limitation on UIM claims was unreasonable according to the Court of Appeals because it may require an insured to sue the UIM carrier before ever knowing whether the tortfeasor is indeed underinsured. Accordingly, the Court of Appeals found State Farm's UIM limitation was void and the statutory fifteen-year statute of limitations for general contract actions applied.[2]

## II. ANALYSIS.

Summary judgment is an extraordinary remedy that should be "cautiously applied and should not be used as a substitute for trial."[3] Instead, summary judgment is only appropriate "to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant."[4] A motion for summary judgment is to be reviewed in a light most favorable to the opposing party, but the opposing party cannot defeat the motion "without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial."[5] After all, a trial court's role is "not to resolve any issue of fact, but to discover whether a real fact issue exists."[6]

1. 174 Fed.Appx. 311 (6th Cir. 2006).

2. *See* Kentucky Revised Statutes (KRS) 413.090(2).

3. *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 483 (Ky.1991).

4. *Paintsville Hosp. Co. v. Rose,* 683 S.W.2d 255, 256 (Ky.1985). "Impossible," of course, should be interpreted in "a practical sense, not in an absolute sense." *Perkins v. Hausladen,* 828 S.W.2d 652, 654 (Ky.1992).

5. *Steelvest,* 807 S.W.2d at 482.

■ Our review of a lower court's resolution of a summary-judgment motion involves only legal questions and, like those lower courts, the determination of whether an issue of fact exists. We do not resolve issues of fact. Because of this, we operate under a de novo standard of review.

■ We have recognized from its inception that UIM coverage is first-party coverage.[7] This means that the insurer has a "contractual obligation directly to the insured which must be honored even if the tortfeasor cannot be identified."[8] As a result of this contractual obligation, an insured's action against the UIM carrier is appropriately labeled a breach-of-contract action. The tortfeasor is not required to be a party to the action, and the UIM carrier may be sued before the insured has even obtained a judgment against the tortfeasor.[9]

On several occasions we have reviewed attempts by insurers to limit the time in which insureds may bring uninsured motorist (UM) and UIM claims. Though we have emphasized that insurance companies are not "inhibit[ed] ... from contracting with their insureds for a shorter period of time to file a contractual claim,"[10] we have yet to approve such a limitation. A few principles have become settled with regard to such limitations: (1) any limitation imposed by the insurer must be "reasonable"[11]; (2) requiring insureds to bring a UM or UIM claim within one year from the accident is unreasonable[12]; (3) it is "illogical to ... require a plaintiff to sue his own insurer before discovering whether or not the tort-feasor is in fact, [uninsured or underinsured] motorist"[13]; (4) UM and UIM claims are grounded in contract so in the absence of a limitation provision, by omission or invalidation, the fifteen-year statute of limitations for general actions on a written contract is applicable[14]; and (5) an insured seeking UM or UIM benefits "should have the same rights as he would have had against an insured third party."[15] But what remains unclear is— outside of a one-year limitation—how may an insurer reasonably limit the time within which to claim UIM coverage.

■ In the instant case, State Farm linked Riggs's UIM coverage to the tort claim time limitation found in the KMVRA, KRS 304.39–230(6). That statute requires a tort action to "be commenced not later than two (2) years after the injury or death, or the last basic or added reparation payment made by any reparation obligor, whichever later occurs." This is the exact language used by State Farm in the UIM portion of Riggs's policy.

We are unable to find this limitation unreasonable. Consistent with the principles listed above, providing the insured with the same time as a tort claim (perhaps longer depending on the duration of

---

**6.** *Shelton v. Ky. Easter Seals Soc., Inc.*, 413 S.W.3d 901, 905 (Ky.2013).

**7.** *Coots v. Allstate Ins. Co.*, 853 S.W.2d 895, 898 (Ky.1993).

**8.** *Id.*

**9.** *See id.*

**10.** *Gordon v. Ky. Farm Bureau Ins. Co.*, 914 S.W.2d 331, 333 (Ky.1995).

**11.** *See Elkins v. Ky. Farm Bureau Mut. Ins. Co.*, 844 S.W.2d 423 (Ky.App.1992); *Belcher v. Travelers Indemnity Co.*, 740 S.W.2d 952 (Ky.1987).

**12.** *Elkins*, 844 S.W.2d at 425.

**13.** *Gordon*, 914 S.W.2d at 332.

**14.** *Gordon*, 914 S.W.2d at 332–33.

**15.** *Elkins*, 844 S.W.2d at 425.

BRB [16] payments) does not require an insured to sue his own insurer before filing suit against the torfeasor,[17] nor does it require "a plaintiff to sue his own insurer before discovering whether or not the tortfeasor is in fact an [underinsured] motorist." [18] Instead, State Farm's provision brings together all insurance claims stemming from a particular auto accident and places them on equal footing. Two years (or more if BRBs are paid) is enough time for the insured to discover the extent of automobile liability insurance coverage the tortfeasor has and whether that coverage will be sufficient for the suffered injuries. Admittedly, there may be circumstances where an insured may need to file his UIM claim while his tort lawsuit is pending or, to put it more directly, before the value of his claim has exceeded the policy limits of the tortfeasor's liability policy and a UIM claim's viability is more apparent.

So, on its face, State Farm's provision seems reasonable. But KRS 304.39–320 poses a problem, according to Riggs. In Riggs's estimation, a UIM claim does not exist until after entry of a judgment against the tortfeasor. If this were so, State Farm's limitation would be unreasonable because it would apparently require an insured to assert a fictitious claim—a UIM claim *before* a judgment against the tortfeasor.[19] We, understand this argument is based in the text of the statute, but it lands wide of the mark.

Relevant to Riggs's assertion, KRS 304.39–320(1) defines an "underinsured motorist" as "a party with motor vehicle liability insurance coverage in an amount less than a *judgment recovered against that party* for damages on account of injury due to a motor vehicle accident." [20] Riggs also relies heavily on KRS 304.39–020(3), specifically the following provision: "If an injured person or, in the case of death, the personal representative agrees to settle a claim with a liability insurer and its insured, and the settlement would not fully satisfy the claim for personal injuries

**16.** Or PIP payments. As we have repeatedly acknowledged, PIP and BRB payments are the same—the terminology is interchangeable. *See, e.g., Stevenson ex rel. Stevenson v. Anthem Cas. Ins. Group*, 15 S.W.3d 720, 723 (Ky.1999) ("Although the correct terminology is, of course, 'basic reparation benefits,' that terminology has been used interchangeably with 'personal injury protection' (PIP) benefits when describing what are generally known as 'no-fault' benefits under Kentucky law.").

**17.** As an aside, perhaps *requiring* an insured to proceed in this manner would be problematic. Perhaps. In the abstract, though, there is no principle of law that prohibits an insured from seeking relief from his UIM provider before proceeding against the tortfeasor. In essence, that would be nothing more than subrogation. As we mention below, our case law is filled with examples of an insured suing simultaneously his UIM insurer and tortfeasor. Often, the UIM insurer elects to pay its insured in place of the tortfeasor and then turn its attention to the tortfeasor for

subrogation. And again, as we note below, our case law treats the UIM insurer's payment as a judgment against the tortfeasor, so KRS 304.39–320 does not prevent this procedure. As it is, we see little reason why an insured could choose to go directly to his UIM insurer for recovery, assuming, of course, he proved the tortfeasor's liability.

**18.** *Gordon*, 914 S.W.2d at 332.

**19.** Riggs uses KRS 304.39–320(2) to argue why State Farm's limitation is prohibited. That section requires the terms and conditions of UIM coverage to not be "inconsistent with this section."

**20.** Emphasis added. KRS 304.39–320(2) likewise states that under UIM coverage "the insurance company agrees to pay its own insured for such uncompensated damages as he may recover on account of injury due to a motor vehicle accident because *the judgment recovered against the owner of the other vehicle* exceeds the liability policies thereon...." Emphasis added.

or wrongful death *so as to create an underinsured motorist claim . . . .*[21] These provisions simply cannot support the weight Riggs places upon them. .

It bears repeating here that the tortfeasor is not an indispensable party in an action between an insured and his UIM carrier, nor does the insured need first obtain a judgment against the tortfeasor before filing suit against his UIM carrier—at least not in the strict sense argued by Riggs. We have been down this road many times before. In Coots, we noted that with regard to both UM and UIM, "proof the offending motorist is a tortfeasor and proof of the amount of damages caused by the offending motorist are not preconditions to coverage, but only essential facts that must be proved before the insured can recover judgment in a lawsuit against the insurer on the contract of insurance."[22] Going further, we read KRS 304.39–320 to require "the policy limits in the tortfeasor's policy [to] be exhausted before the UIM carrier [is obligated] to pay," but recognized that "the liability of the tortfeasor and the amount of damages sustained are elements that must be established in measuring the UIM carrier's obligation and not a statutory precondition to coverage."[23] Riggs argues a UIM claim does not exist without a judgment against the tortfeasor, but this is simply not true— we were clear in Coots and have repeatedly stood on that principle since. A judgment is not a prerequisite, it is simply a material element to a claim for UIM coverage. In other words, an insured must prove the extent of the tortfeasor's liability in order to claim UIM benefits.[24]

The bottom line is this: an insured's UIM claim does not spring to life only after a judgment against the tortfeasor. The insured is always in possession of the UIM claim because his contractual rights are independent of the tort judgment.[25] Even without State Farm's limitation here, an insured could proceed against his UIM carrier before he proceeds against the tortfeasor[26] or, the overwhelm-

21. Emphasis added.

22. *Coots,* 853 S.W.2d at 899.

23. *Id.*

24. This is exactly what KRS 304.39–320(1) says. It defines an "uninsured motorist," not an uninsured-motorist claim. Of course, any motorist who has contracted with a UIM provider can claim their right to those benefits. A motorist does not become an "uninsured motorist" until either receiving a judgment against the tortfeasor for an amount below the amount of injury damages or receiving payment from the UIM insurer in the tortfeasor's stead. Be this as it may, it does not mean a motorist cannot file a claim seeking the benefits because he believes he is underinsured. It simply means he is not underinsured unless his damages are greater than the tortfeasor's policy limit.

25. Often a UIM claim is labeled as a breach-of-contract action. While this may be true in limited circumstances, it is not the most accurate categorization available. A UIM claim, in its simplest form, is more analogous to a declaratory action. The insured is simply seeking to have his rights declared under the insurance policy, *i.e.* the contract. More often than not, the UIM insurer has not denied coverage to constitute a *breach*; rather, the insured simply files a claim with the insurer and demands the policy amount outlined in the contract. The UIM insurer may, of course, dispute the amount, but that does not constitute a breach. If it did, the breach would be occurring *after* the breach-of-contract action was filed. We mention this because State Farm's limitation does not force an insured to file a breach-of-contract action before the breach any more than *any* UIM insured is forced to, policy provisions aside.

26. The UIM carrier could elect to pay its insured the tortfeasor's policy limits and preserve its subrogation right. The insured would then be fully compensated both for the damage caused by the tortfeasor and the amount owed under his UIM policy. The

ingly more likely and popular option, proceed against both simultaneously. Our case law, in fact, is replete with examples of this, long before State Farm's limitation was challenged as unreasonable.[27] Examples of this process have not been viewed with any degree of disfavor by any court, including this one. So it is difficult to argue State Farm's limitation is unreasonable when it does nothing more than reflect a practice that has been ongoing for years. All this to say, State Farm's limitation is not inconsistent with KRS 304.39–320.

In addition, as State Farm points out, the insured may file the lawsuit asserting entitlement to UIM benefits and request the trial court stay the proceedings until the tort lawsuit is completed and the tortfeasor's policy limit is known or the insured could seek a tolling agreement from the UIM provider so that the clock would be stopped until the tort lawsuit was completed. Riggs, perhaps rightly so, paints

this option as unappealing and impractical. But it is an option nonetheless.

Such a contractual term is not unreasonable because it dovetails nicely with our law regarding the tortfeasor's role (or lack thereof) in an insured's suit against his UIM insurer as well as the relationship between the tortfeasor's and UIM insurer's respective liabilities. And the two-year period, in and of itself, is not unreasonable because it is unlikely that injured parties will delay any longer than absolutely necessary asserting a claim against the tortfeasor or the UIM carrier. In fact, as our case law indicates rather plainly, the vast majority of insureds file a single suit naming both the tortfeasor and UIM insurer as defendants.[28] State Farm's limitation operates largely the same.

We are aware, that a UIM claim does not sound in tort and would not otherwise be governed by the MVRA's two-year statute of limitation—in fact, we explicitly said so in *Gordon*. But an argument here

---

UIM insurer's substitution of its own funds "operates as the equivalent of a settlement between the party claiming damages and the tort-feasor because the tortfeasor is released from further liability to the party claiming damages." *True v. Raines*, 99 S.W.3d 439, 447 (Ky.2003) (quoting *Washington v. Milbank Ins. Co.*, 562 N.W.2d 801, 806 n. 3 (Minn.1997)). Put another way, the UIM insurer's payment constitutes a judgment against the tortfeasor for purposes of KRS 304.39–320. Clearly, though, the viability of the UIM claim was in no way dependent on this judgment existing *before* the claim was filed.

**27.** *See, e.g., Earle v. Cobb*, 156 S.W.3d 257 (Ky.2004) (suit against both tortfeasor and UIM provider); *True*, 99 S.W.3d 439 (injured party filed a single action against the tortfeasor *and* the UIM insurer; jury meted out damages for each); *Hill v. State Farm Mut. Auto Ins.*, 2008 WL 2219835 ("In other words, *anticipating a large jury verdict against [the tortfeasor]*, Hill asserted an UIM claim against her insurer, State Farm.") (emphasis

added); *G & J Pepsi–Cola Bottlers, Inc. v. Fletcher*, 229 S.W.3d 915 (Ky.App.2007); *Hughes v. Lampman*, 197 S.W.3d 566 (Ky. App.2006); *Hamilton Mut. Ins. Co. v. U.S. Fid. & Guaranty Co.*, 926 S.W.2d 466 (Ky. App.1996) (reviewing suit where injured party filed suit against the tortfeasor *and* UIM insurer). This practice makes a good deal of sense considering our repeated acknowledgement that "the UIM carrier and the tortfeasor are 'codebtors *in solido* ', *i.e.,* they are jointly and severally liable for damages recoverable as a result of the tortfeasor's negligence." *Cincinnati Ins. Co. v. Samples*, 192 S.W.3d 311, 315 (Ky.2006) (internal citation omitted).

**28.** For reasons unknown, Riggs's counsel elected not to proceed this way. There is a morsel of truth in clichés and, in this instance, bad facts do indeed threaten to make bad law. The date of the accident is the crucial date in insurance litigation for all parties. The accident is the engine that drives every aspect of the litigation. Tying UIM to this date does not seem unreasonable; to the contrary, it makes a lot of sense.

based on that concept misses the mark because we are not so much concerned with whether a UIM claim should be labeled a tort claim or a contract claim as whether State Farm and Riggs have contracted for a UIM claim limitation that accomplishes the policy and purpose of UIM coverage in a reasonable way. It is difficult to condemn State Farm's provision as unreasonable because, at its simplest, it encourages the prompt presentation of all the potential insurance claims relating to a single accident and forces them to progress through the court system in a more cohesive way—a way that insurance claims have proceeded through our court system for decades. This is not contrary to public policy—in fact, a strong argument could be made that it benefits the public. State Farm's provision provides an insured with "the same rights as he would have had against an insured third party" [29] —a result that is not at all unreasonable.

## III. CONCLUSION.

The trial court did not err when it concluded that the provision is enforceable and Riggs's claim was untimely. So we reverse the decision of the Court of Appeals and reinstate the judgment of the trial court.

All sitting. Minton, C.J., Cunningham, Hughes, JJ., concur. Noble, J., concurs by separate opinion. Keller, J., dissents by separate opinion, in which Venters and Wright, JJ., join,

### NOBLE, J., CONCURS:

Appellee Lonnie Dale Riggs was injured in an automobile accident while acting in the line of duty as a city police officer. His injuries were severe and permanent, and, being work related, were covered initially by Workers' Compensation. He received salary-continuation benefits, and thus was not eligible to receive basic reparation benefits from any motorvehicle insurance carrier. Consequently, the payment of reparations benefits has no bearing on the limitations question at issue in this case.

Nearly two years after the accident occurred, Appellee filed a personal-injury action against the allegedly negligent driver. During discovery, Appellee learned that the limit of the defendant's liability insurance policy was $100,000. He demanded the policy limit, which defendant's carrier denied. Appellee then moved for a trial date and for leave to amend his complaint to bring in his UIM carrier, State Farm. The Court assigned a trial date, and allowed the claim against State Farm. Around two months later, the tortfeasor's carrier tendered policy limits.

At that point, Appellee sent a *Coots* letter [30] to State Farm, which waived subrogation. Appellee then accepted payment of the $100,000 policy limit from the tortfeasor's carrier. State Farm had filed an answer when it was brought into the action denying that it owed any benefits to the Appellee, and subsequently engaged in written discovery with Appellee for approximately four months before bringing a summary judgment motion on December 2, 2011.

The basis for the summary judgment motion was the language in the limitation clause in the insurance policy between State Farm and Appellee stating that there was no right of action against State Farm for underinsured motor-vehicle coverage unless the action was commenced

---

29. *Elkins*, 844 S.W.2d at 425.

30. For the origin of such letters, see *Coots v. Allstate Insurance Co.*, 853 S.W.2d 895 (Ky. 1993).

"no later than two (2) years after the injury . . . or the last reparation payment made by any reparation obligor, whichever later occurs." The policy language basically mirrors the language in KRS 304.39–230(6), which sets a time limitation for motor-vehicle *torts*. The trial court agreed with State Farm, but the Court of Appeals reversed, holding that parroting a *tort* limitation statute is unreasonable in a *contract* cause of action.

The Court of Appeals found this contractual provision to be unreasonable because it would require the premature filing of an underinsured-motorist (UIM) claim:

> Until an injured party files suit against the alleged tortfeasor and engages in discovery to ascertain the limits of the tortfeasor's liability insurance, the injured party cannot determine whether the tortfeasor is indeed an underinsured motorist. This is so because the UIM carrier's liability, and the amounts and limits of that liability, is predicated upon the prior determination of the shortfall between the insured's claimed damages and the coverage of those damages available under the tortfeasor's policy of insurance. Stated differently, the UIM carrier can only be held liable for those damages exceeding the limits of the tortfeasor's insurance. Until the injured party discovers those limits, he or she cannot conclusively discern whether the tortfeasor is underinsured. While, of course, a tortfeasor or his insurance carrier may freely notify the injured party of the tortfeasor's liability policy limits, we know of no statute or procedural rule that compels a tortfeasor or his insurance company to do so absent a proper discovery request.

(Citations omitted.)

This is certainly correct, as far as the statement goes. An underinsured-motorist carrier cannot be prematurely brought into an action against its will, and there is no statutory or procedural requirement that the carrier be given notice of a possible UIM claim. But that is not what this case is about.

Instead, this case involves the reasonableness of a *contractual* provision in an insurance policy accepted and paid for by the insured by which the carrier has, in essence, assented to being prematurely brought into the action, and has the right to be notified of the potential UIM claim. Here, the agreement between State Farm and its insured in the policy provides that any underinsured-motorist claim action must commence no later than two (2) years after the injury. Nothing in the Court of Appeals decision demonstrates why it would be *unreasonable* to include such a provision in a policy.

It is true that an argument can be made that it would be unreasonable to bring an underinsured-motorist claim *against* State Farm before the provisions of the policy are actually implemented by accepting payment of the tortfeasor's policy limit (when the limit will not cover the existing damages). But we are not operating in a vacuum. Here, it is *State Farm* that is being brought into an action prematurely, and it is *State Farm* that has bargained for that very thing. The most that can be said from this scenario is that under this contract provision, a plaintiff must bring a claim against State Farm no later than two (2) years after the injury in order to hold State Farm legally liable for the claim, whether State Farm has an obligation to pay at that time or not. That, however, is to State Farm's legal detriment, not the Appellee's. State Farm is clearly an entity capable of understanding that it is not normally liable on a contract until there has been a breach, and that this provision *waives* that position.

It is obvious that State Farm sees value in being involved in a case in which it is at least *potentially* liable from the beginning of the action, even if that liability cannot fully be measured and established until later. Since State Farm, if it is held to have to pay under an uninsured-motorist policy, is actually adverse to the person who has paid the policy premiums, it is reasonable to see why State Farm is willing to waive any prematurity of the claim against it in order to defend itself from any liability throughout discovery and motion practice on the tort liability and damages claim.

It is less obvious to see why this provision is also reasonable for the insured, because it is hard to overcome the natural dislike felt when an insured, who has paid premiums to the insurer, is treated as adverse by the insurer. But given their contractual relationship that is exactly the alignment when an underinsured carrier is asked to pay uninsured-motorist benefits to an insured. Insurance companies do not want to pay out benefits. Insureds want to be paid. The dispute can only be resolved by applying the terms of the agreement (the insurance policy) between the parties.

At argument, Appellee portrayed having to bring the underinsured-motorist claim no later than two years after the injury as placing an unreasonable burden on him, thus making this provision of the policy unreasonable. But as pointed out above, the party giving up a legal interest is *State Farm*. All the Appellant must do is simply bring the claim in a shorter time period than *State Farm* might be entitled to. This contractual provision is not primarily about the Appellant; it is a term State Farm bargained for. But the provision certainly does not fail for lack of consideration.

There is a reasonable benefit to an insured under this provision. The amount of insurance premiums paid by the insured is based on the risk the insurer bears. By placing itself in the litigation from the beginning, State Farm can do cost management that decreases the risk that comes from a longer exposure. Also, by not being involved early in the process, the risk to State Farm increases that it will be stuck with legal consequences caused by other parties to the litigation that are later unavoidable. Evidence can be lost, or memories fade, making it harder for State Farm to defend against the claim and increasing the likelihood of a payout. This is an entirely mercenary read of this situation, but insurance companies are a business, not benevolent aid organizations.

And, the benefit to the insured from this reduced risk is reduced insurance premiums, which are an ongoing expense, especially if he never has to make a claim.

Another benefit to the insured is that he is not required to bring successive litigation, which he would have to do if a judgment were required before State Farm could be sued. Under this provision, if State Farm is present early in the action, or at least within the agreed-upon time limit, as soon as policy limits are proffered an insured can proceed accordingly against State Farm. Since this does not involve an out-of-court settlement for policy limits that could well leave the underinsured-motorist insurance carrier out of the loop, which is the usual *Coots* situation, State Farm would already be a party to the action, ready to proceed on the remaining issues immediately, and thus avoid delaying resolution for the insured.

Perhaps most important to the reasonableness analysis, however, is that it is impossible to show *legal* harm to the insured in such a situation. Even if the claim against State Farm would not be

"ripe," State Farm has waived the right to raise this claim. Certainly, this waiver would prevent any Civil Rule 11 claim. *Strategically,* an insured might prefer not to have State Farm present within two years of the date of injury or last reparations benefit, whichever is later, but that does not equate to legal prejudice.

Consequently, I concur with Chief Justice Minton's opinion.

### KELLER, J. DISSENTING:

I respectfully dissent. In my view, under KRS 304.39–320 State Farm's limitation provision is unenforceable and under general contract law it is unreasonable.[31]

KRS 304.39–320 provides that:

(2) Every insurer shall make available upon request to its insureds underinsured motorist coverage, whereby subject to the terms and conditions of such coverage *not inconsistent with this section* the insurance company agrees to pay its own insured for such uncompensated damages as he may recover on account of injury due to a motor vehicle accident because the judgment recovered against the owner of the other vehicle exceeds the liability policy limits thereon, to the extent of the underinsurance policy limits on the vehicle of the party recovering.

(3) If an injured person or, in the case of death, the personal representative agrees to settle a claim with a liability

insurer and its insured, and the settlement would not fully satisfy the claim for personal injuries or wrongful death *so as to create an underinsured motorist claim,* then written notice of the proposed settlement must be submitted by certified or registered mail to all underinsured motorist insurers that provide coverage....

(Emphasis added.) Thus, a UIM claim does not even exist until the injured person resolves his claim with the tortfeasor for less than the full value of the tort claim. State Farm's limitation provision, which begins to run with the date of injury rather than the date of settlement, required Riggs to file suit before a UIM claim even existed.

The majority argues that this interpretation of the statute "lands wide of the mark" because a judgment is not a prerequisite to bringing a UIM claim. Furthermore, the majority notes that "[o]ur case law ... is replete with examples" of insureds proceeding against the tortfeasor and UIM carrier simultaneously. I do not disagree with the majority's reasoning but I do disagree with its conclusion. The issue is not when an insured *may* file suit, but when he *must* file suit. As noted above, KRS 304.39–320(2) provides that an insurer must offer "to its insureds underinsured motorist coverage ... that is not inconsistent with" KRS 304.39–320. KRS 304.39.320(3) provides that a claim is not

---

31. I note that the majority's opinion is out of step with the majority of jurisdictions that have weighed in on this issue. While I do not believe that this Court should slavishly adhere to what the majority of other jurisdictions do, I also do not believe that we should ignore what I believe to be good law. *See American States Ins. Co. v. LaFlam,* 69 A.3d 831, 839 (R.I. 2013) ("The overwhelming majority of jurisdictions that have considered this issue have concluded that the limitations period begins to run on a UIM claim upon the insur-

er's breach of the insurance contract rather than the date of the accident."); Jeffrey A. Kelso and Matthew R. Drevlow, *When Does the Clock Start Ticking? A Primer on Statutory and Contractual Time Limitation Issues Involved in Uninsured and Underinsured Motorist Claims,* 47 Drake L. Rev. 689, 694 (1999) ("The most commonly held rule in UM/UIM cases is that the cause of action, because it is contractual in nature, accrues on the date the contract is breached.").

created until the insured settles his claim with the tortfeasor. I do not believe State Farm can make available a policy that *requires* its insured to file suit before a claim exists in direct derogation of the statute.

Furthermore, under general contract law, State Farm's limitation provision is unreasonable. As the majority notes, "an insured's action against the UIM carrier is appropriately labeled a breach-of-contract action." "Under Kentucky law, in order to recover in any action based on breach of a contract, a plaintiff must show the existence and the breach of a contractually imposed duty." *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir.2001) *citing Strong v. Louisville & Nashville R. Co.*, 240 Ky. 781, 43 S.W.2d 11, 13 (1931).

The UIM policy, consistent with KRS 304.39–320(2), provides that State Farm is obligated to pay "the difference between the amount of the *insured's* compensatory damages for *bodily injury,* and the total of the limits of all bodily injury liability policies or bonds of any *person* or organization who is or may be held liable for the *bodily injury*[.]" (Emphasis in original.) State Farm does not become obligated to pay any amount until it and its insured can agree that the insured is entitled to collect compensatory damages from the tortfeasor and the amount of compensatory damages the insured "is legally entitled to collect." If the parties cannot agree, then the policy requires the insured to file suit to collect any benefits that may be due. Thus, before State Farm is obligated to perform under the contract the insured must, at a minimum, establish liability on the part of

the tortfeasor and that the amount of damages exceeds the limits of the tortfeasor's insurance.

State Farm's limitation may (and I believe quite often will) force its insureds to sue before State Farm has any contractual duty to pay. In other words, the insureds will be put in a position of suing State Farm before State Farm has breached the contract and before the insureds have sufficient proof to establish that their claims exist. A period of limitation that expires before a breach of contract has occurred and before a claim exists is, I believe, *per se* unreasonable. I know of no other situation where the law in this Commonwealth *forces* a plaintiff to bring and a defendant to defend a cause of action before it exists.[32]

In this case, that is exactly what occurred. Riggs brought suit against the tortfeasor, who contested liability and the amount of damages up to the point that he settled Riggs's claim.[33] While Riggs may have been able to establish that he had some entitlement to compensatory damages from the tortfeasor before settlement, he could not establish the amount of compensatory damages to which he was "legally entitled" until settlement. Therefore, if he had adhered to State Farm's limitation language, Riggs would have been forced to file a claim before he could provide State Farm with sufficient information to force it either to comply with the contract or breach it. The majority states that this problem can be solved by simply asking the trial court to stay the UIM claim pending the receipt of additional proof or resolution of the claim against the tortfeasor.

32. Certainly, as the majority notes, nothing prevents the parties from pursuing claims before they contractually exist. However, as I previously noted, permitting the parties to proceed is different from forcing them to do so.

33. A copy of the settlement agreement between Riggs and the tortfeasor is not in the record. Therefore, it is unclear if the tortfeasor ever admitted liability.

However, this falls short of providing protection to the insured because staying the UIM claim is discretionary, not mandatory. If the majority truly wants to protect the insured, it should mandate that the trial court stay the UIM claim if asked to do so.

Taking the majority's opinion to its logical conclusion, a UIM insured should sue his carrier immediately after any motor vehicle accident in the event damages, which are not fully known, exceed the limits of the other party's insurance, the extent of which is also not yet known. The insured could then, as the majority and State Farm point out, "request the trial court to stay the proceedings until the tort lawsuit is completed and the tortfeasor's policy limit is known...." That certainly does not, as the majority posits, force insurance claims "to progress through the court system in a more cohesive way—a way that insurance claims have proceeded through our court system for decades."[34] Nor does it "reduce the need to resort to bargaining and litigation," one of the purposes of the MVRA. KRS 304.39–010(5).

Unfortunately, because State Farm's limitation is unenforceable and unreasonable, the fail-back fifteen-year general contract statute of limitations applies. I recognize and agree with State Farm's argument that this is an unreasonably long period of limitation, which could result in prejudice to both the UIM carrier and the tortfeasor. Certainly, if an insured waits several years after settlement to bring a claim against the UIM carrier proof can be lost and will undoubtedly be stale. However, as pointed out by Riggs, it is unlikely that the majority of insureds, who were likely severely injured, will delay filing a claim in order to gain some possible tactical advantage. Thus, the likelihood of this prejudice befalling UIM carriers is limited. Furthermore, State Farm and other insurers can avoid this result by simply beginning any limitation period with the date of settlement between the insured and the tortfeasor. That limitation could be less than a year from settlement, as long as it gives the insured a reasonable period of time to file a claim thereafter.

Finally, State Farm argues that providing a longer limitation period for UIM claims will result in serial litigation of motor vehicle accident claims. According to State Farm, insureds will first try the underlying tort claim, then try the UIM claim, resulting in multiple trials of the same case. Setting aside my belief that insureds are no more interested in trying cases twice than insurers are, I note that State Farm and other UIM carriers are free to intervene in any suit filed by their insureds. Furthermore, as State Farm and the majority note, UIM carriers are almost always currently joined as parties by their insureds without the need to intervene.

Venters and Wright, JJ., join.

**34.** As I previously noted, the issue is not what is possible but what is mandatory. Furthermore, simply because claims have proceeded in a particular manner through the court system in one way "for decades" does not mean that way is necessarily "a more cohesive way."