RENDERED: MAY 14, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NOS. 2020-CA-0227-MR AND 2020-CA-0541-MR

VIVIANE RENOT                                                          APPELLANT

|     | APPEAL FROM FAYETTE CIRCUIT COURT |
|-----|-----------------------------------|
| v.  | HONORABLE LUCY A. VANMETER, JUDGE |
|     | ACTION NO. 16-CI-01853            |

SECURA SUPREME INSURANCE
COMPANY                                                                 APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; ACREE AND TAYLOR, JUDGES.

CLAYTON, CHIEF JUDGE: Viviane Renot ("Renot") appeals from a judgment

following a jury verdict in favor of Secura Supreme Insurance Company

("Secura") in Renot's direct action against her underinsured motorists' ("UIM")

carrier from injuries allegedly sustained in a vehicle collision. Upon review, we

affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This matter involves a claim for injuries allegedly sustained by Renot in connection with a rear-end motor vehicle accident that occurred in November of 2013. Renot was stopped at a red light at an intersection, and Carolyn Price attempted to stop but slid on the wet pavement and bumped into the rear of Renot's vehicle.

Renot did not report any injuries at the scene of the accident, nor did she seek medical attention for any condition related to the accident for nearly six weeks. She first reported neck pain in early January 2014 but ascribed it to sleeping in an unusual position a few weeks prior and not to the collision. Renot first reported knee pain in early February 2014, stating that she felt a pop and sharp pain in the right knee on the previous day while at a physical therapy session for her neck pain. Her medical records also stated that she had fallen down some stairs in the previous weeks leading up to such appointment.

Over the succeeding two years, Renot underwent a number of surgical procedures on her knees, including a right knee arthrotomy with medial femoral condyle resurfacing in March 2014, a right knee incision and drainage procedure due to infection in April 2014, a left knee arthroscopy, debridement, meniscectomy, and chondroplasty in October 2014, and a total unilateral right knee replacement in March 2015.

In May of 2016, Renot filed suit against Price and Secura, as her UIM coverage insurance carrier, claiming that Price was an uninsured or underinsured motorist and that Renot had sustained in excess of $250,000.00 in past medical expenses stemming from the collision.

Beginning on November 18, 2019, a four-day jury trial was held concerning Renot's UIM claim against Secura. Renot's claims against Price were resolved and settled prior to the trial. After hearing all the evidence and testimony, the jury found that the collision had not been a substantial factor in causing Renot's injuries, including any arousal, aggravation, or exacerbation of a pre-existing condition. Three members of the jury dissented.

The Fayette Circuit Court entered a judgment on the verdict in favor of Secura on January 6, 2020 and assessed costs against Renot pursuant to Kentucky Rule of Civil Procedure (CR) 54.04. On January 16, 2019, Renot filed a motion for a new trial, a motion to alter, amend, or vacate judgment, and a motion for judgment notwithstanding the verdict, which the trial court denied in an order entered on February 6, 2020. This appeal followed.

As a matter of procedure, we note that Case No. 2020-CA-0227-MR is an appeal from the trial court's judgment and Case No. 2020-CA-0541-MR is an appeal from a supplemental judgment from the same action concerning the award of costs against Renot after the trial. The appeals were consolidated by order of

this Court entered on August 12, 2020. Because Renot's brief does not discuss any arguments concerning the award of costs against Renot, such arguments have been waived. *See Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 815 (Ky. 2004) (finding that failure to address issue in appellate brief resulted in waiver of the issue).

Further facts will be developed as required to address the specific issues presented herein.

## ISSUES

On appeal, Renot argues that the trial court erred by failing to strike for cause an allegedly biased juror, by allowing an expert witness to testify on issues outside his qualifications and without scientific methodology or data, by not allowing the introduction of evidence regarding certain alleged party admissions, and by failing to correct a juror's statements during *voir dire* regarding "double dipping."

## ANALYSIS

### a. Standard of Review

As stated by a separate panel of this Court, "[t]he granting of a new trial is within the discretion of the trial court." *Kaminski v. Bremner, Inc.*, 281 S.W.3d 298, 304 (Ky. App. 2009). "When a trial court denies a motion for a new trial, our standard of review is whether there has been an abuse of that discretion."

*Id.* "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000). The trial court's decision is "presumptively correct" and should not be reversed "unless that decision is clearly erroneous." *McVey v. Berman*, 836 S.W.2d 445, 448 (Ky. App. 1992).

### b. Discussion

### 1. Jury Selection

Renot's first argument on appeal is that the trial court erred when it refused to strike a potential juror—Juror 4006—for cause. During the questioning of the potential jurors, Juror 4006 stated that her father was a medical malpractice defense attorney and she felt that people would bring frivolous lawsuits. Thereafter, however, she immediately stated, "not that this is happening here at all. I think I can remain open-minded about that." She stated that she did not agree with people who "game the system," or who "try to get more than they really deserve, or maybe represent their symptoms in a way that—and once again, I'm not saying that's happening here." Secura's counsel then inquired as to whether Juror 4006 could hear the evidence fairly, to which the juror replied, "I do think so, yes, yes."

At the bench conference that followed, Renot made a motion to strike Juror 4006 for cause, and the trial court brought Juror 4006 to the bench to be questioned further regarding her views. She expanded on her comments regarding frivolous lawsuits, noting that her father worked in a small town in Western Kentucky and explaining that the claimants tended to be her father's friends and were not very educated, and that often their claims were frivolous. The juror noted that she had worked for insurance companies before she retired, but as a computer programmer in the life insurance setting. When Juror 4006 was questioned as to whether she could—based on the evidence put forth at trial—decide the case without being influenced by her father's cases, she answered that she thought she could. Juror 4006 also stated that it was "obvious that [Renot] is suffering." When asked if she regarded Renot's claims as being frivolous, she answered, "oh no, no, no. I mean, she is going through something, it's just a matter of what caused it." Juror 4006 agreed that she would be able to follow the trial court's instructions. Finally, the juror explained that she had formerly served on a jury in a criminal matter, and that she had eventually changed her mind after hearing all the evidence in that case.

After the foregoing exchange, Renot's counsel argued that the trial court should strike Juror 4006 for cause. The trial court declined, noting that Renot had the burden of proof and Juror 4006 had been clear that if Renot met

such burden of proof, she could award damages against Secura. Ultimately, Renot utilized one of her peremptory strikes on Juror 4006.

Kentucky has long recognized that the test for whether to strike a juror for cause is "whether, after having heard all of the evidence, the prospective juror can conform his views to the requirements of the law and render a fair and impartial verdict." *Mabe v. Commonwealth*, 884 S.W.2d 668, 671 (Ky. 1994). The trial court "must weigh the probability of bias or prejudice based on the entirety of the juror's responses and demeanor[,]" as "impartiality is not a technical question but a state of mind." *Shane v. Commonwealth*, 243 S.W.3d 336, 338 (Ky. 2007). Indeed, "the decision to exclude a juror for cause is based on the totality of the circumstances, not on a response to any one question." *Fugett v. Commonwealth*, 250 S.W.3d 604, 613 (Ky. 2008). Further, as stated by the Kentucky Supreme Court, "[a] determination as to whether to exclude a juror for cause lies within the sound discretion of the trial court, and unless the action of the trial court is an abuse of discretion or is clearly erroneous, an appellate court will not reverse the trial court's determination." *Commonwealth v. Lewis*, 903 S.W.2d 524, 527 (Ky. 1995). The trial judge is in the best position "to observe the demeanor of the prospective jurors and understand the substance of their answers to *voir dire* questions[.]" *Mabe*, 884 S.W.2d at 671.

In this case, the trial court did not abuse its discretion when it denied Renot's motion to strike Juror 4006 for cause. As stated in *State Farm Mutual Automobile Insurance Company v. Riggs*, Renot's claim required her to "prove the extent of the tortfeasor's liability in order to claim UIM benefits." 484 S.W.3d 724, 729 (Ky. 2016). Further, it is axiomatic that a plaintiff bears the burden of proof by a preponderance of the evidence in a civil case. *See CertainTeed Corp. v. Dexter*, 330 S.W.3d 64, 73 (Ky. 2010). Juror 4006's comments justifiably imposed such a burden on Renot. Certainly, "[t]he juror's answers, when viewed in their entirety, suggest the juror was being conscientious, not showing bias. Ultimately, the juror assured those present that she could listen to the evidence and render a fair and impartial verdict." *Stoker v. Commonwealth*, 828 S.W.2d 619, 625-26 (Ky. 1992). Juror 4006 noted that Renot was obviously hurt and in pain, but the ultimate question in the juror's mind was what had been the cause of that pain. She stated on numerous occasions during *voir dire* that she did not necessarily feel that Renot's claims were frivolous or not in good faith, but simply held the view that Renot would have to prove her case. Moreover, Juror 4006 indicated that she would follow the trial court's jury instructions and illustrated that she could be convinced to change her viewpoint when presented with all the evidence. Considering the totality of the circumstances surrounding Juror 4006's statements, along with our deference to the trial court as having the best

opportunity to examine her demeanor, the record indicates that Juror 4006 could render a fair verdict upon an overall examination of the evidence presented at trial, and the trial court did not abuse its discretion.

## 2. Expert Witness Testimony

Renot next argues that the trial court should have excluded the testimony of one of Secura's expert witnesses, Dr. David Porta, claiming that he had no scientific methodology or data to support his opinions and that he testified to issues that were outside of his qualifications. Dr. Porta was a professor of anatomy at Bellarmine University, the owner of a forensic consulting company, and a member of the collaborating research faculty at Virginia Tech College of Engineering and Wake Forest University Medical School Center for Injury Biomechanics. Additionally, he had been published multiple times in the areas of human anatomy, injury, and fractures and had written chapters in medical texts such as "Biomechanics of Impact Injury."

Secura retained Dr. Porta as an expert witness for purposes of providing opinions as to biomechanics, anatomy, and injury causation in connection with the vehicle collision in this case, as well as to rebut the opinions of Renot's expert, Dr. Smock. Renot filed a pretrial motion to exclude Dr. Porta's testimony, which the trial court granted in part and denied in part. Specifically, the trial court found that Dr. Porta could not testify as to medical causation but could

testify as a biomechanical expert concerning the mechanism of Renot's injury, or injury causation. In other words, Dr. Porta could testify, as stated by the trial court, to "whether [Renot's] diagnosed injuries are of the type that could have been caused by the collision," but not whether, for example, she had "sustained a cervical strain or a knee bruise in the collision."

As to Renot's first argument, she specifically claims that Dr. Porta's opinions failed to satisfy the requirements contained in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) and Kentucky Rule of Evidence (KRE) 702 because his testimony was not "the product of reliable principles and methods[.]" KRE 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if:
>
> (1) The testimony is based upon sufficient facts or data;
>
> (2) The testimony is the product of reliable principles and methods; and
>
> (3) The witness has applied the principles and methods reliably to the facts of the case.

Further, as stated by the Kentucky Supreme Court:

> When faced with a proffer of expert testimony under KRE 702, the trial court's task is to determine whether the expert is proposing to testify to scientific, technical or

-10-

other specialized knowledge that will assist the trier of fact to understand or determine a fact in issue. This calls upon the trial court to assess whether the proffered testimony is both relevant and reliable. The consideration of relevance has been described as one of fit, while the consideration of reliability entails an "assessment into the validity of the reasoning and methodology upon which the expert testimony is based." The central inquiry into the admissibility of expert testimony is therefore "an assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue."

*Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 39 (Ky. 2004) (citations omitted).

A trial court's ruling on the admission of expert testimony is reviewed under the same standard as a trial court's ruling on any other evidentiary matter—that is, for an abuse of discretion. *Thompson*, 11 S.W.3d at 578.

Here, Renot claims that Dr. Porta's opinions failed to satisfy the above requirements "because his opinions did not bear any mark of reliability." In support of his opinions, Dr. Porta testified that he reviewed the police report from the collision, Renot's vehicle's VIN report, the damage estimate for Renot's vehicle, ten photographs of Renot's vehicle, three photographs of Renot's knee, two photographs of Price's vehicle, Renot's medical records, the independent medical examination report, party and witness depositions, forty-five photographs provided by Dr. Smock, discovery responses, and Renot's expert witness disclosures. Dr. Porta testified that he also studied crash test data pertaining to

-11-

both vehicles involved in the collision, along with information regarding low-speed rear impact cases. Dr. Porta did not perform specific testing on Renot or her vehicle but did review Dr. Smock's expert disclosures and photographs.

Based on the foregoing, we believe that Dr. Porta's opinions were based on reliable methods or information. Dr. Porta reviewed Renot's claimed injuries, photographs of the vehicle damage, and the anticipated motion of the individuals within their vehicles. He further reviewed crash test data to determine the expected degree of vehicular damage under certain circumstances and the probability of resulting injury. Such opinions were reliable and based on accepted reasoning and methodology.

Renot next claims that parts of Dr. Porta's testimony amounted to testimony regarding medical causation, about which the trial court had specifically indicated he was not qualified to discuss. In particular, Renot points to the fact that Dr. Porta based his opinion "on the prior history" of Renot's knee, "because my understanding was the accident occurred on November 26, 2013, but prior to that there was a long history of knee issues. So, as I looked at it, and again, I'm no physician, but when I saw the first [right knee] complaint was ten weeks later and there was no mention of the accident, they did not appear related to me. And so that was my initial . . . I don't see any relation between this accident . . . I can't really see where the complaint is." Renot moved for a mistrial, arguing that the

trial court had specifically ruled that Dr. Porta was not qualified to testify regarding causation.

We do not believe that Dr. Porta's testimony went beyond his qualifications in this case. At trial, Dr. Porta referenced dates and types of treatment contained in medical records which he had previously reviewed, had been appropriately introduced into evidence, and were uncontested. While Dr. Porta discussed the time lapse between the collision and Renot's treatment, he did not state any medical opinions as to such treatment. Any references that Dr. Porta made to the medical records or to the gaps between the collision and Renot seeking treatment were with regard to a connection between the accident and the injury. Dr. Porta "did not testify as to the extent of injuries and their physiological effects on the body," which would be an objectionable medical opinion. *Tetrick v. Frashure*, 119 S.W.3d 89, 93 (Ky. App. 2003). Instead, his testimony was appropriate and fell within the trial court's requirements based on his qualifications.

Renot further takes issue with Dr. Porta's testimony regarding Renot's physicians' diagnosis of chondromalacia of the knee. However, Dr. Porta's discussion pertained only to anatomy or biomechanics, including the structures of the knee and the amount of force required to affect the knee. Again, Dr. Porta made no diagnosis and did not refute the correctness of a diagnosis or opine as to

-13-

whether Renot's symptoms were connected to a specific injury. He was qualified

to explain the anatomical impact of a certain medical diagnosis. The trial court felt

the same, stating:

> [Dr. Porta's] training as an anatomist certainly qualifies him to explain the body, how it works. And in this case he was relying on the medical doctors to make a diagnosis, and then taking that diagnosis and explaining what that meant as applied to the body, and whether or not that injury diagnosed by a doctor was caused by the mechanism of this accident. And I think his CV and certainly his testimony at trial established that he was qualified to do that.

We affirm.

### 3. **Excluded Evidence**

Renot next argues that certain statements of Secura's CR 30.02(6)

corporate representative during a deposition should have been admitted into

evidence as the statements of a party opponent. Specifically, she references

Secura's discussion of pre-litigation payments made under the policy's basic

reparations or personal injury protection (PIP) benefits coverage:

> Q.     [I]t is now SECURA Supreme Insurance Company's position that it – although it paid the medical expenses for this date – it now has changed its mind and believes that this medical treatment was not related to her collision, correct?
>
> A.     Correct.
>
> . . . .

-14-

Q. And although SECURA reviewed the medical bill and medical treatment for this date, and rendered payment for it, it has now changed [its] mind and believes that that was not in fact related, correct?

A. Correct.

. . . .

Q. Is it SECURA Supreme Insurance Company's position that although it paid for Viviane Renot's right knee surgery, and hospital stay from March 25 to March 27, 2014, that although it agreed those are related at the time, it now has changed its mind, and no longer believes that that right knee surgery and hospital stay was in fact related to the collision on November 26, 2013?

. . . .

A. We – we certainly paid for it at the time.

In a pretrial order, the trial court granted Secura's motion *in limine* requiring that Renot ask no questions and introduce no evidence concerning Secura's PIP or basic reparations benefits coverage or payments. Renot claims that the trial court erred because such payments amounted to a concession by Secura that there was causation between her injuries and the subject accident for purposes of her UIM coverage policy.

Under Kentucky law, an insurance carrier's payment of claims under a PIP policy differs from payments made pursuant to a UIM policy. Once a PIP claimant submits his or her medical bills, there is a statutory presumption "that any medical bill submitted is reasonable" under Kentucky Revised Statute (KRS)

-15-

304.39-020(5)(a). *State Auto. Mut. Ins. Co., v. Outlaw*, 575 S.W.2d 489, 493 (Ky. App. 1978). Moreover, PIP benefits "shall be paid without regard to fault." KRS 304.39-040(1). Indeed, the legislative purpose of PIP coverage was "to provide a remedy to automobile accident victims [of up to $10,000] that could not be impinged upon by any means whatsoever." *Blue Cross & Blue Shield of Kentucky, Inc. v. Baxter*, 713 S.W.2d 478, 480 (Ky. App. 1986), *overruled on other grounds by Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991).

On the other hand, no presumption of reasonableness exists related to medical bills in UIM claims. As previously discussed, Renot was required to "prove the extent of the tortfeasor's liability in order to claim UIM benefits." *Riggs*, 484 S.W.3d at 729. Thus, evidence concerning PIP coverage is not relevant to the UIM coverage. *See* KRE 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Moreover, the probative value of such evidence would be substantially outweighed by the danger of misleading or confusing the jury. KRE 403.

Renot also claims that a discussion during trial concerning property damage opened the door to evidence regarding PIP coverage. Because we have

determined that the evidence of the PIP payments was properly excluded, the trial court's rulings on these issues are affirmed.

### 4. **Juror's Statements During *Voir Dire***

Renot's last argument is that an unprompted question posed by a prospective juror during *voir dire* amounted to improper evidence of collateral source payments which required an admonishment from the trial court. Specifically, the prospective juror initiated the following exchange with Secura's counsel:

> Juror 4119:   Okay, she worked in the school system . . . she can get supplement of insurance, so did she receive money from that supplement as well? . . . Also, did she receive long-term money from being off work?
>
> Counsel:      That is not a question that I can answer.

After the trial judge explained to the jury the reason why counsel could not answer the question, the same prospective juror then stated, "Well, I just want to know is there double dipping," which prompted laughter from the prospective jurors. At a subsequent bench conference, Renot's counsel requested that the trial judge issue an admonition, which the judge declined to do because the statement at issue was made by a juror and not by a witness.

In this case, the question was unilaterally posed by a juror during *voir dire*. While actual evidence of collateral source payments being presented to a jury is impermissible under *O'Bryan v. Hedgespeth*, 892 S.W.2d 571, 573 (Ky. 1995),

that case involved a specific ruling by the trial court that evidence of collateral source payments would be admitted. In contrast, the question here did not equate to evidence because it was not introduced by or through a witness at trial and the prospective jurors were not provided with an answer. Therefore, such question did not require an admonishment from the trial court to the jury, and we affirm.

## **CONCLUSION**

For the foregoing reasons, we affirm the Fayette Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Sandra M. Varellas
D. Todd Varellas
Preston P. Cahill
Lexington, Kentucky

BRIEF FOR APPELLEE:

Ashley K. Brown
Graham D. Barth
Lexington, Kentucky