David S. KAMINSKI, Appellant,

v.

BREMNER, INCORPORATED, Appellee.

No. 2006–CA–002439–MR.

Court of Appeals of Kentucky.

March 27, 2009.

Pamela C. Bratcher, Bowling Green, KY, for appellant.

Thomas E. Berry, Jr., pro hac vice, St. Louis, MO, B. Todd Wetzel Princeton, KY, for appellee.

Before MOORE, NICKELL, and STUMBO, Judges.

*OPINION*

NICKELL, Judge.

David S. Kaminski (Kaminski) appeals from the Lyon Circuit Court's trial judgment and order finding in favor of Bremner, Incorporated (Bremner) following a three-day jury trial in which Kaminski claimed he was terminated for filing a workers' compensation claim. Kaminski also appeals the denial of a new trial motion alleging juror misconduct and irregularities in the jury verdict. For the reasons that follow, we affirm.

The facts giving rise to the retaliatory termination claim are irrelevant to this appeal. Suffice it to say, Kaminski incurred a workplace injury. Shortly after revealing to Bremner's safety director that he had suffered a herniated disc, Kaminski was terminated. Bremner's reason for the termination was Kaminski's use of company time (both his and another employee's) to build a deer stand for his personal use. In the jury trial that followed, Kaminski alleged he was actually fired because of his back injury and his claim for workers' compensation benefits.

At the conclusion of the evidence, the trial court considered instructions tendered by both parties.[1] The version ultimately given to jurors was very similar to the language proposed by Kaminski. While Bremner's attorney voiced two objections to the wording used by the court, counsel for Kaminski said she had no ob-

---

1. The trial court record does not contain the instructions proposed by Bremner. However, the videotape record shows Bremner's counsel asking the court clerk for the instructions he proffered on May 3, 2005, titled "Defendant's Proposed Jury Instructions." After looking through the record, the clerk concluded the document was not filed in the record.

Kaminski's proposed instruction read:
You will find for the Plaintiff, David Kaminski, if you find from the evidence that his intention to file and pursue a workers' compensation claim against the Defendant was a substantial and motivating factor in the Defendant's decision to discharge him, but for which he would not have been discharged.
We the jury find for the Plaintiff
_____

OR
We the jury find for the Defendant
_____

jection to the court's written instruction which read:

> You will find for the Plaintiff, David S. Kaminski, if you are satisfied from the evidence that his intention to file and pursue a workers' compensation claim against the Defendant, Bremner, Inc., was a substantial and motivating factor in the Defendant's decision to discharge him, but for which he would not have been discharged. Otherwise you will find for the Defendant Bremner.

> Do you believe from the evidence that the Plaintiff's intention to file and pursue a workers' compensation claim against the Defendant was a substantial and motivating factor in the Defendant's decision to discharge the Plaintiff, but for which he would not have been discharged?

> Yes _____
>
> No _____

> _____ _____
> Foreperson (if unanimous)

> _____ _____
>
> _____ _____
>
> _____ _____
>
> _____ _____

After the court read the instruction to the jury, both parties gave closing arguments. Jurors then left the courtroom around 1:17 p.m. to begin deliberating. At 3:19 p.m., the jury sent a note to the court saying it was deadlocked by a vote of eight to four. After discussing the matter with counsel, the court gave the jury an *Allen*[2] charge at 3:40 p.m. Jurors resumed deliberations at

3:41 p.m. and returned to open court with a verdict at 4:44 p.m.

What transpired in the next sixteen minutes is the sole basis of this appeal. As soon as the verdict form was handed to the judge, the foreman, Charles Lester (Lester), said, "Hold it. Can I see that just a second? I think I checked the wrong (inaudible)." The verdict form was returned to Lester where out of camera range, but in open court, he altered the verdict form. He then stated, "I'm terribly sorry about that," and returned the form to the bailiff who handed it back to the court. The court then read the verdict aloud stating:

> COURT: The question is: Do you believe from the evidence that the Plaintiff's intention to file and pursue workmans' compensation claim against the Defendant was a substantial and motivating factor in the Defendant's decision to discharge the Plaintiff, but for which he would not have been discharged? The jury answers—well we got a nine here by "No." Does that mean nine jurors voted "No?"
>
> LESTER: Yes, sir.
>
> COURT: Does either side wish for the jury to be polled.
>
> KAMINSKI's ATTORNEY: Yes.
>
> COURT: Okay, ladies and gentlemen we're going to poll the jury. That means we're going to call your name, and if this is your verdict, you answer by saying "No"—in other words, you answer by saying "Yes." It gets a little confusing I guess. If you—if this is your verdict—basically answering "No" to that question—you answer by saying

**2.** This is a reference to *Allen v. United States*, 164 U.S. 492, 501, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896) in which the United States Supreme Court approved a judge's instruction to a potentially deadlocked jury. In Kentucky, the term *"Allen* charge*"* has been superseded by Kentucky Rules of Criminal Procedure (RCr) 9.57 but use of the term persists. The trial court instructed jurors in conformity with RCr 9.57 and there is no allegation of impropriety in this regard.

"Yes." Is that confusing enough for you. Okay.

Thereafter, the clerk called the names of all twelve jurors. Two of them, James Barnett (Barnett) and Margaret Campbell (Campbell), hesitated in responding, whereupon the court made specific inquiry of them as follows:

CLERK: James Barnett.

BARNETT: (No response).

COURT: You understand the question Mr. Barnett?

BARNETT: No.

COURT: Okay, did you, did you vote no?

BARNETT: No to what?

COURT: Okay.

BARNETT: Which one?

COURT: On this verdict.

BARNETT: Did I vote no?

UNIDENTIFIED VOICES: You need to say yes. You voted no.

BARNETT: Yes.

. . . .

COURT REPORTER: Margaret Campell.

CAMPBELL: (No response).

COURT: Ms. Campbell do you understand what we're asking? In response to this question, "Do you believe from the evidence the Plaintiff's intention to file and pursue a workers' compensation claim against the Defendant was a substantial and motivating factor in the Defendant's decision to discharge the Plaintiff but for which he would not have been discharged?" Did you vote yes or no to that question?

CAMPBELL: Yes.

COURT: You voted yes? Okay.

Ultimately, the nine jurors[3] who had signed the verdict form in favor of Bremner, including Barnett, also confirmed verbally that they had voted in favor of Bremner. Campbell did not sign the verdict, meaning she voted for Kaminski and indicated as much in her response.

At the end of the polling, the court directed the clerk to ask each juror whether he/she had voted for the verdict. However, before any additional polling could occur, Kaminski's attorney asked to examine the verdict form. After counsel for both parties looked at the document, Kaminski's attorney moved for a mistrial arguing the verdict form was irregular on its face because the foreman had changed the form in open court and two jurors appeared confused when asked how they had voted. After discussing the matter with all counsel at the bench, the court denied Kaminski's motion for a mistrial and stated it believed the best approach was to send the jury back to resume its deliberations with a clean verdict form.

Counsel for Bremner said he was okay with the court's suggestion. Kaminski's attorney, however, opposed sending jurors back to resume deliberations. After more discussion, Bremner's attorney suggested the court simply ask the jurors whether they had voted in favor of Bremner or Kaminski. When the court asked whether the attorneys wanted him to pose that question to the jury, Kaminski's attorney said she wanted the jurors to be sent back to the jury room. Thereafter, the court told jurors they were being sent back to the jury room because the court had awkwardly phrased the polling question and the jury foreman had changed the form while in open court. Once jurors left the courtroom at 4:57 p.m., the court invalidat-

---

**3.** Section 248 of the Kentucky Constitution allows a verdict of nine of twelve jurors in civil actions tried in circuit court.

ed the original verdict form and stated what had transpired for the record.

The jury returned to the courtroom at 4:59 p.m., and the foreman again announced that they had reached a verdict. The same nine jurors who had signed the original verdict form had also signed the second verdict form, again in favor of Bremner. During *sua sponte* polling, the court told jurors to answer "Yes" if the verdict was theirs or "No" if it was not. Four jurors, including Barnett, responded "No." The court again called the attorneys to the bench where counsel for Bremner said he thought jurors were confused by being told to answer the court's polling question opposite the way they had voted in the jury room. At that point, the court spoke directly to Barnett.

> COURT: Okay, Mr. Barnett you signed this verdict form as agreeing with the verdict.
>
> BARNETT: Yes sir.
>
> COURT: Is that right?
>
> BARNETT: That's right.
>
> COURT: Okay. And the verdict form was do you believe from the evidence that the plaintiff—I'm going to try to clear up this confusion, if there is any confusion—do you believe from the evidence that the plaintiff's intention to file and pursue a workers' compensation claim against the defendant was a sub-

stantial and motivating factor in the defendant's decision to discharge the plaintiff but for which he would not have been discharged. And the answer is no on the verdict form. Did you vote for a "No" answer?

> BARNETT: Yeah.
>
> COURT: You did. Okay. And you signed this as voting for the "No" answer? Is that correct?

Although Barnett's final answer is inaudible, the judge's comments and gestures indicate Barnett answered in the affirmative. This is consistent with comments by counsel for Bremner who stated for the record that Barnett had softly answered "Yes" to the court's question. Thus, Barnett and eight other jurors, for a total of nine, did vote in favor of Bremner. After reviewing the second jury verdict form, Kaminski renewed his mistrial motion on the same grounds previously cited, which the court denied. Thereafter, the jurors were discharged, and Kaminski's attorney prepared the trial judgment and order which was entered by the court on September 7, 2006.

▆▆ Kaminski filed a motion for a new trial[4] alleging four grounds: (1) juror misconduct;[5] (2) irregularity in the jury verdict; (3) juror confusion about the instructions; and (4) erroneous exclusion of evidence.[6] Kaminski's first argument was

---

4. Kentucky Rules of Civil Procedure (CR) 59.

5. This claim was based in part on an allegation that jury foreman Lester slept during a portion of the trial. However, there was no contemporaneous objection, no citation to the point in the trial at which Lester supposedly slept nor the alleged length of his nap, no offer of tangible proof such as an affidavit from a courtroom observer to substantiate the allegation, and no explanation of how Lester's alleged nap adversely impacted the verdict. The trial court deemed the claim untimely and it is not argued on the appeal before us. A thorough treatment of this topic may be

found at George L. Blum, J.D., Annotation, Inattention of Juror from Sleepiness or Other Cause as Ground for Reversal or New Trial, 59 A.L.R.5th 1 (2003) (collecting cases)(originally published in 1998).

6. Kaminski argued evidence of similar misconduct by other Bremner employees was wrongly excluded by the trial court. This allegation is not argued in the appeal to this Court. "Failure of appellant to discuss the alleged errors in its brief is the same as if no brief had been filed in support of its charges." *R.E. Gaddie, Inc. v. Price*, 528 S.W.2d 708, 710 (Ky.1975).

that Lester had improperly changed the original signed jury verdict form in open court. The trial court found Lester's alteration did not change the jury's actual verdict, as demonstrated by the polling of the jury that followed, and further stated any irregularity in the original verdict was "sanitized" by sending jurors back for more deliberations. Kaminski's next argument in his new trial motion was that Barnett's responses to the court's polling questions showed he was incapable of rendering a valid verdict because his "individualized internal mental assent was missing." The court acknowledged Barnett was confused by the court's questions, but rejected the assertion that Barnett lacked the mental capacity to participate in the jury deliberations or that the court's oral questions pressured him into voting with the majority. The court also stated it "did not observe or hear any other jurors coaxing or coaching Mr. Barnett, and there is no evidence whatsoever that Mr. Barnett ever changed his verdict." Finally, the court rejected Kaminski's argument that the tendered written instruction was confusing, noting that Kaminski had "accepted the instruction before it was ever read to the jury, and, in fact, it contains much of the exact language set forth in [Kaminski's] proposed instruction." After hearing argument on the new trial motion, it was denied by order entered October 23, 2006.

Kaminski now appeals to this Court arguing the cumulative effect of the foreman altering the verdict form in open court, the clumsy wording of the written jury instruction, and Barnett not appearing to know how he voted, requires reversal and a new trial. We disagree.

■ The granting of a new trial is within the discretion of the trial court. When a trial court denies a motion for a new trial, our standard of review is wheth-

er there has been an abuse of that discretion. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Lester v. Commonwealth*, 132 S.W.3d 857, 863 (Ky. 2004) (quoting *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000)). We presume the trial court to be correct and will reverse only upon clear error. *Shortridge v. Rice*, 929 S.W.2d 194, 196 (Ky.App.1996). Our review of the videotaped record convinces us the trial court did not abuse its discretion. Thus, reversal is unwarranted.

■ Kaminski's first allegation is that the jury foreman's modification of the jury verdict form in open court requires reversal. However, altering a verdict form in open court is not automatic grounds for reversal and a new trial.

In *Callis v. Owensboro–Ashland Co.*, 551 S.W.2d 806, 808 (Ky.App.1977), we held it was not reversible error for a trial court to recall jurors to correct a verdict after being discharged. There, almost immediately upon discharging jurors, the trial court realized there were inconsistencies in the verdict. The bailiff returned all twelve jurors to the courtroom where the judge questioned the foreman about the jury's intent and asked the ten jurors who had formed the majority to sign a second verdict form as if it was their original verdict. All of this occurred in the presence of the parties and their attorneys and without objection. When polled at the request of the plaintiff's attorney, all jurors affirmed the verdict. We deemed the error in *Callis* to be one of form, not of substance, saying,

> It is clear that the Plaintiffs had their day in court. A competent jury decided the matter. To return this matter for a new trial would permit a possible distortion of the true jury verdict, and in

effect give the Plaintiffs a second day in court after the matter had been fully litigated and finally decided. It is possible to speculate that the trial court might have followed a better practice in returning the jury to the jury room with specific instructions, but at least one Kentucky case, *Penker Construction Company v. Finley,* Ky., 485 S.W.2d 244 (1972) indicates that permitting the jurors to sign the verdict in open court is not objectionable.

*Id.* We read *Callis* to say altering a jury verdict form in open court is not grounds for automatic reversal. In the present case, nine jurors acknowledged the verdict for Bremner was their own. Thus, were we to reverse and send the matter back for a new trial, we, likewise, might be permitting a possible distortion of the true verdict and in effect might be providing Kaminski a second day in court after the matter has been fully litigated and finally decided. We decline to do so.

Kaminski cites *Deemer v. Finger,* 817 S.W.2d 435 (Ky.1991), in support of his argument. In *Deemer,* during an *ex parte* communication, a juror asked the trial court what she could tell people about her jury service. During their discussion, which was recorded on videotape, the juror mentioned her husband had revealed information to her about the case that she had not learned in the courtroom. Neither attorney was contemporaneously made aware of the judge's discussion with the juror, nor of the juror's conversation with her husband. It was not until an attorney reviewed the videotaped record much later that the discussion came to light and error was alleged. In *Deemer,* the *ex parte* communication was concealed, and our Supreme Court held reversal for a new trial was necessary. However, in the case at bar, the jury foreman, in open court, asked to see the verdict form before it was read aloud. Both his request and his subsequent modification of the verdict form occurred in full view of the attorneys, the court, and most importantly, the entire jury. During polling, no juror ever said the change made by Lester (presumably moving the number nine from the line for "Yes" to the line for "No") did not reflect the verdict of the nine-member majority.

Based upon *Callis,* we are unwilling to say that the trial court abused its discretion in denying the requested mistrial, invalidating the original verdict form, sending jurors back for further deliberations, and denying Kaminski's new trial motion upon hearing nine jurors claim the verdict for Bremner was their own. We agree with the trial court. Invalidating the original verdict and sending jurors back to the jury room "sanitized any irregularity or inconsistency up to this point in the proceedings." Thus, we hold modification of the jury verdict by the foreman in open court did not constitute reversible error, and the trial court did not abuse its discretion in denying Kaminski's motion for a new trial.

■ Kaminski's second allegation is that Barnett was confused about his vote and therefore nine jurors could not have "unambiguously manifested their assent to the verdict." Without identifying any particular suspicious action, Kaminski suggests Barnett was inattentive. Juror inattentiveness is recognized as a form of juror misconduct. *Lester, supra,* 132 S.W.3d at 862. We have reviewed the videotaped record. Barnett does not appear to have been confused about his verdict at all, although he does appear to have been confused by the oral questions posed to him by the court during polling. Even before the first round of polling got underway, the court commented that the phrasing of his oral question directing jurors to tell him "Yes" if they had voted

"No" was potentially confusing. Nevertheless, we agree with defense counsel that the trial court's somewhat inartful phraseology in posing its oral polling inquiry did not, however, alter how each individual juror had already voted in rendering his/her verdict.

During the second round of polling, without prompting from any other jurors, Barnett confirmed he had signed the form as agreeing with the verdict and that he had voted "No" on the verdict form. Therefore, we reject Kaminski's allegation that Barnett was pressured into voting for Bremner.

Contrary to Kaminski's argument, we are convinced the jury reached a clear nine-person majority. Further, a review of the record convinces us the jury took its task seriously. In reaching their verdict in favor of Bremner, the jury weighed the absence of Bremner's safety director as a witness since Kaminski had alleged his termination followed shortly after he conveyed his MRI results to the safety director. The jury also deliberated for three and one-half hours and reached the same conclusion not once, but twice. Unlike Kaminski, we see no evidence of juror misconduct or inattentiveness.

 Kaminski maintains the trial court should have sent jurors back to deliberate for a third time rather than questioning Barnett about his vote. However, the trial court controls the manner of polling and, so long as it is designed to confirm whether jurors assented to the verdict as announced, it is permissible. Questioning a juror to clarify his answer during polling is not coercive. *King v. Ford Motor Co.*, 209 F.3d 886, 896 (6th Cir.2000). We agree that continued repetitive polling is not helpful and may vitiate the integrity of any result it may achieve, but that precept does not come into play until "a juror's dissent is clearly registered[.]" *Kendall v. United States,* 349 A.2d 464, 466 (D.C.App.1975); *In re Pearson,* 262 A.2d 337, 340 (D.C.App.1970).

In cases where mistrials have been declared, or new trials held, because of the answer by a juror during a jury poll, courts generally hold that the response of the juror indicated a lack of free and voluntary assent, or that the juror entertained considerable doubt about the defendant's guilt. Other cases, however, have held that where the juror's answer indicates that he assented to the verdict, although with some reservations or reluctance, the trial court's concern is whether the juror did in fact assent, and the court does not delve into the exact degree of the juror's reluctance. Annot. 25 A.L.R.3d 1149 (1969). The trial judge determines the degree of voluntary assent from the exact words of the jury, and from the circumstances, including the juror's demeanor.

*Glass v. Commonwealth,* 769 S.W.2d 764, 765 (Ky.App.1989). In the case *sub judice,* the wording of the court's polling question did not yield clear dissent, nor even reluctance, by Barnett. Furthermore,

[j]uror polls resulting in far more questionable answers than [his] have been liberally upheld. *Emmert v. State,* 127 Ohio St. 235, 187 N.E. 862 (1933). ("I didn't want to sign it that way" cured by "I signed it, yes sir" when court asked whether that was her verdict. And "Mine is because the majority rules is all" held cured by "It is my signature and my verdict, yes.") *Watts v. State,* 142 Ga.App. 857, 237 S.E.2d 231 (1977). (Verdict upheld where juror replied that verdict was "with question.") *People v. Bradley,* 62 Mich.App. 39, 233 N.W.2d 177 (1975). (Verdict upheld where juror replied "I couldn't come to terms with the rest, so I decided I would vote

guilty" cured by juror's affirmation that she had voted guilty.)

*Glass, supra,* 769 S.W.2d at 766. In the case before us, the court's questioning of Barnett demonstrates nothing more than an attempt to determine whether Barnett had, in fact, voted in conformity with his signature on the verdict form.

Furthermore, to establish lack of unanimity in a verdict, during polling a juror must "connote that the verdict was given by her involuntarily, or forced upon her, or against her will." *Fleming v. Commonwealth,* 419 S.W.2d 754, 756 (Ky.1967). Neither Barnett nor any other juror ever indicated his vote resulted from coercion, pressure or involuntariness, as was the case in *Cannon v. Commonwealth,* 291 Ky. 50, 163 S.W.2d 15, 16 (1942). Here, Barnett did not indicate he was forced to do anything, and he voted the same way twice, clearly demonstrating consistency. We simply cannot say that the trial court abused its discretion in choosing to clarify Barnett's agreement with the verdict instead of sending jurors back to the jury room for a third time.

Kaminski's final allegation is that the trial court's written instruction was confusing. He argues the instruction he tendered was clearer. However, upon comparing the two, we deem Kaminski's version essentially the same as the one given by the court. The trial court has discretion to deny a requested instruction, and the court's exercise of that discretion in this case did not amount to abuse. *Olfice, Inc. v. Wilkey,* 173 S.W.3d 226, 229 (Ky.2005). Further, Kaminski cannot complain about the instruction being confusing when he proposed most of its language. *Wathen v. Mackey,* 300 Ky. 115, 187 S.W.2d 1000 (1945). Moreover, the court's instruction accurately stated the law. *First Property Management Corporation v. Zarebidaki,* 867 S.W.2d 185, 188 (Ky.1994).

We do not deem the written instruction to have been confusing. We also note Kaminski accepted the court's written instruction without complaint and did not suggest that it be clarified before jurors were returned to the jury room to resume deliberations. Any confusion did not arise until the trial court orally directed jurors to respond with the word "Yes" during polling if they had voted "No" on the written verdict form and signed it. We have no reason to hold the court abused its discretion in crafting the written jury instruction or thereafter in orally polling jurors concerning their verdicts.

For the foregoing reasons, the trial judgment and order of the Lyon Circuit Court, as well as its order denying Kaminski's motion for a new trial, are affirmed.

ALL CONCUR.