RENDERED: SEPTEMBER 25, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0993-MR

JOHN O. KING, II                                                          APPELLANT

APPEAL FROM CASEY CIRCUIT COURT
v.        HONORABLE JUDY VANCE MURPHY, JUDGE
ACTION NO. 17-CI-00185

JEREMY KENT LUTTRELL                                                APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; KRAMER AND MCNEILL, JUDGES.

KRAMER, JUDGE: John O. King, II, appeals from a September 20, 2018 judgment of the Casey Circuit Court awarding him $3,856.51 in compensatory damages from the appellee, Jeremy Kent Luttrell. The issue in this case is whether the trial court committed reversible error in permitting a jury to correct part of its

verdict after the jury had been, in King's view, "partially discharged." Upon review, we affirm.

In September 2016, John King entered an oral agreement to purchase a log skidder from Jeremy Luttrell for $10,000, payable in regular installments. Afterward, King made several payments to Luttrell after taking possession of the skidder. However, Luttrell later declared King in default and repossessed the skidder on May 24, 2017. The following November, King filed a complaint against Luttrell in Casey Circuit Court, alleging Luttrell's repossession of the skidder was improper, amounted to conversion, and warranted compensatory and punitive damages.

King's claim against Luttrell later proceeded to trial. At the conclusion of the evidence, the trial court determined as a matter of law that at the time Luttrell had repossessed the skidder, King still owed Luttrell $6,143.49 of the $10,000 purchase price. Nevertheless, the question of the fair market value of the skidder was submitted to the jury because King had also adduced evidence that he had improved the skidder while it had been in his possession, whereas Luttrell had adduced evidence to the contrary. Accordingly, assuming the jury found in King's favor regarding his conversion claim, the jury was further directed to make the following determination regarding King's compensatory damages:

## INSTRUCTION NO. 2

If you found for the plaintiff in Instruction No. 1, you will determine from the evidence and award Plaintiff a sum of money based upon the fair market value of the plaintiff's property at the time said property was converted by the defendant, less the sum of $6,143.49.

We the Jury award the plaintiff _____.

Recall, King's claim against Luttrell asked for both compensatory and punitive damages. With that said, while all the evidence regarding King's asserted compensatory and punitive damages was adduced during the jury trial, the court "bifurcated" the jury's determinations for purposes of the parties' closing arguments, directing the jury to begin by only considering liability and compensatory damages.

After roughly an hour and a half, the jury concluded its deliberations in those respects and returned to the courtroom. It announced it had determined Luttrell had indeed converted King's property.

And, as to King's award of compensatory damages pursuant to "Instruction 2," the jury returned a unanimous verdict: "$10,000." At Luttrell's request the jury was polled, and each juror affirmed the verdict.

Afterward, the trial court explained the punitive damages instruction to the jury ("Instruction No. 3"). The parties gave closing arguments regarding what amount, if any, King should receive in punitive damages. And, the jury left

-3-

the courtroom to deliberate. Less than a minute after having left the courtroom, however, the jury returned. The bailiff informed the judge that "one of the jurors had a question about the amount." The juror in question was then called to the bench; the court and juror had a brief conversation; and, after the juror had rejoined her peers, the court asked the parties' counsel to approach. Whereupon, the court explained to the parties' counsel that the juror had stated it had not been the jury's intent to award King $10,000. Rather, under its understanding of "Instruction 2," the jury had believed it had been directed to determine the fair market value of the skidder and that the court would determine King's compensatory damages by deducting $6,143.49 from that amount.

In response, King's counsel argued it would be improper for the jury to alter or otherwise revisit its $10,000 compensatory damages verdict because it "had already been polled." Nevertheless, over King's objection, the trial court re-read Instruction 2 for the jury and re-polled them regarding their determination. Subsequently, the first five re-polled jurors once again stated, "My verdict." However, when the sixth re-polled juror was asked, he responded: "Is this time to change it?" Two other jurors said, "Yes," and the juror then answered, "Not my verdict." Thereafter, the six remaining jurors also answered, "Not my verdict."

Because at least nine of the jurors had not agreed to awarding King $10,000, the trial court directed the jurors to re-deliberate regarding Instruction 2

-4-

and further instructed each juror "to hand-write in the amount that is their verdict."

Before the jury was sent to re-deliberate, however, King's counsel objected again and approached the bench. The relevant part of his counsel's ensuing dialogue with the trial court, which forms much of the basis of the instant appeal, was as follows:

> COUNSEL: Judge, this is absolutely untenable and contrary to all law. We have, you have asked this jury for a second time to change their mind, and –
>
> COURT: I'm not asking them to change their mind. It was brought to my attention that it was not –
>
> COUNSEL: Well judge, wait one second, let me finish and then we can talk. But if you, if you've already been polled, they cannot change their verdict. There's law to that. They can appeal, that's their only remedy, that's the defendant's only remedy, but you –
>
> COURT: I have a jury sitting here telling me that's not what they've decided.
>
> COUNSEL: You had one person tell you that.
>
> COURT: And they have how many that –
>
> COUNSEL: It's simple. You counseled, you counseled that one person, which is not on the record –
>
> COURT: It's on the record.
>
> COUNSEL: No, no, judge. It's not on the record.
>
> COURT: We're on the record right now.
>
> CLERK: This is recording, yes.

COUNSEL: No, no. No. We were not on the record when you counseled with her because –

COURT: Yes, it was.

CLERK: It records this on the record. It's just not taping here.

COUNSEL: Okay, alright. Alright.

CLERK: It's on the record.

COUNSEL: But now, judge. Now, now we've got a hung jury. And now what you want to do, now that we've got a hung jury –

COURT: You want to have this two-day trial again?

COUNSEL: Wait a sec, now, judge. The cause of doing this is when you called that one person up here to see what she wanted to do about this.

COURT: I did not. The bailiff informed me, the bailiff, that I had a juror who had a question for me. I called her over to see what her question was. She said, "Our intent was not to award $10,000. It was $10,000 minus $6,143.49."

COUNSEL: This is the way it should –

COURT: I have twelve people sitting here, and I'm going to fix it while I can before I dismiss them and they go home. I'm not gonna have twelve people in this county know that I awarded something that was not their intent.

COUNSEL: Your honor, but only one person told you that.

COURT:  How many people answered, "Not my verdict?"

LUTTRELL'S COUNSEL:  Six.[1]

COURT:  That's half of our jury, and maybe more who didn't understand.

COUNSEL:  You did, but you gave them the opportunity to do that after they made a verdict.

COURT:  I asked them for a second time, "Is this your verdict?"

COUNSEL:  One person.  One person came up here –

COURT:  Six people said, "Not my verdict."

COUNSEL:  Alright, judge.  But now, I believe we've got a hung jury on our hands, just as a result of doing this.

COURT:  And what do you suggest the remedy is?  That I keep my mouth shut and know that it is not the jury's, that it is not their decision?  And carry on with it knowing it is not their intent?

COUNSEL:  Judge –

COURT:  I'm not doing that.

COUNSEL:  That's not what I'm asking you to do.  Once the jury is in, it's final.  It cannot be changed.  You can't change a verdict once you've polled them.  You have absolutely polled them.

COURT:  And I polled them a second time –

---

[1] "Six" is incorrect.  As indicated, seven jurors indicated that $10,000 was not their verdict.

COUNSEL:  You can't do that.

COURT:  And they told me they made a mistake.

COUNSEL:  I'm saying the law says you cannot poll them a second time.

After overruling King's objections set forth above, the trial court then reiterated for the jury what it was directing them to do, stating:

> Ladies and gentlemen, you are going back into this room with the same instruction number two.  There are some of you who have said this verdict is not your verdict.  I want each of you to pass this paper around and write out, "I, Judy Murphy, hereby vote to award X number of dollars," and sign your name, front and back, if that's what it takes.  Go with the bailiff and make your verdict.

Immediately thereafter, the bailiff once again informed the judge that another juror – the foreman – wished to speak with her.  The foreman was then permitted to approach the bench in the presence of the parties' counsel.  He explained, like the other juror who had approached earlier, that during their prior deliberations the jury had unanimously decided only to award King "all that he had paid" Luttrell, equaling $10,000 minus $6,143.49.  Like the other juror, he further explained the jury's assumption was that the trial court would subtract $6,143.49 from $10,000, and award King the difference; to which, the trial court replied the jury would do the subtracting, not the court.

Upon hearing this, King's counsel then commenced arguing with the foreman:

-8-

COUNSEL:  When you say it was "unanimous," we had four people[2] say it was not unanimous.

FOREMAN:  I don't think they understood.

COUNSEL:  Well, that's what you're saying.  However, when you asked them about their verdict, they said "that was my verdict."

FOREMAN:  You didn't hear what was in the room, sir. I did.

COUNSEL:  Well, four of them came out here just a few minutes ago and said it was their verdict.  Four of them. Now, we've got a hung jury.

Notwithstanding, the trial court reiterated its directions to the jury and dismissed them to re-deliberate.  And, after approximately five minutes, the jury returned with its verdict.  In conformity with the trial court's instructions, each juror had written out his or her own name; and next to his or her name, each juror had written the same award of compensatory damages to King:  "$3,856.51."  As to punitive damages, the jury unanimously awarded King nothing.  No party opted to poll the jury again.

On September 20, 2018, the trial court entered a final judgment consistent with the jury's verdict.  King later moved the trial court, pursuant to CR[3]

---

[2] Again, according to the results of the trial court's second poll, five jurors stated, "My verdict," and seven jurors stated, "Not my verdict."

[3] Kentucky Rule of Civil Procedure.

59.05, to "restore the plaintiff to the verdict of the jury under Instruction No. 2 in the sum of $10,000, and set aside the Judgment granted to plaintiff in the sum of $3,856.51." The substance of his motion is discussed in greater depth below; suffice it to say that his motion was denied, and this appeal followed.

Below and on appeal, despite his repeated assertions to the trial court and jury foreman that the jury was "hung," King has never asked for a new trial. Instead, King contends his judgment against Luttrell should have awarded him $10,000 in compensatory damages, rather than $3,856.51. As to why, he set forth his reasons most succinctly in his CR 59.05 motion,[4] stating in relevant part:

> [U]pon polling of the jury on Instruction No. 2 and their confirmation of the verdict, the verdict was complete as to said instruction and the jury should have been discharged and relieved from that portion of the case pursuant to KRS[5] 29A.320(3)(f) and from any further deliberation on that issue or any activity subsequent to the return by the jury on Instruction No. 3 and Question No. 1 including:
>
> 1. The unilateral discussion with a juror and later foreman, outside the presence of the eleven other jurors who were sitting in the jury box;
>
> 2. The deliberation of certain jurors in open court outside the presence of those jurors who had approached the bench;
>
> 3. The polling of the twelve jurors;

---

[4] King's appellate brief reiterates the substance of his CR 59.05 motion.

[5] Kentucky Revised Statute.

4.  The instruction to the jury requiring the jury to return their individual hand-written monetary verdict for compensatory damages;

5.  The verbal orders of the Court instructing the jury to return to the jury room to recalculate compensatory damages;

6.  The return of the jury reducing the compensatory award from $10,000 to $3,856.51.

We begin with the overarching thesis of King's appeal; namely, his contention that after a jury is polled, or after a jury is "discharged and relieved from [a] portion of the case pursuant to KRS 29A.320(3)(f)," the jury cannot thereafter, in the words of his counsel, "change their mind." This, in turn, begs three questions: (1) May a jury alter its verdict after it is polled? (2) May a jury alter its verdict after it is discharged? And if so, (3) to what extent may a jury be permitted to alter its verdict?

As to the first of these questions, the answer is *yes*. For example, in *Bush v. Commonwealth*, 839 S.W.2d 550 (Ky. 1992), the jury returned an inconsistent verdict. *Id*. at 556. This error was not pointed out until after the jury was polled and then recessed for lunch. After being informed of the error, the foreman, without being asked, responded as to the jury's intent. All of the jurors nodded in agreement, and the foreman signed the verdict form. In concluding that this procedure was proper, the Supreme Court of Kentucky noted that the "jury

-11-

may be reassembled at any time to correct a verdict when the defect is obviously one of form." *Id*. (citing *Curry v. Commonwealth*, 406 S.W.2d 733 (Ky. 1966)).

As to the second of these questions, the answer is another, albeit qualified, *yes*. For example, in *Callis v. Owensboro–Ashland Co.*, 551 S.W.2d 806, 808 (Ky. App. 1977), this Court determined it was not reversible error for the trial court to recall the jurors to correct an inconsistent verdict shortly after discharging the jurors – and before the jurors had left the courthouse – because the error was one of form, not substance. *See also Curry*, 406 S.W.2d 733 (similarly finding no error in trial court permitting jury to amend its verdict after discharging the jury, where the jury had substantially remained in the trial court's presence, because the jury's error had been one of form, not substance).

Regarding the third question, King is correct that it is improper for a trial court to ask a jury to "change its mind" and thus reconsider its verdict. For example, in *Jackson v. Commonwealth*, 303 Ky. 25, 196 S.W.2d 865 (1946), the defendant was charged with breaking into a warehouse and faced a penalty ranging from one to five years' imprisonment. After a jury returned a verdict fixing the penalty at one year of imprisonment,

> the Commonwealth's Attorney stated in open court that unless the jury should give appellant the maximum he would set the verdict aside and call another jury to try the case; that he had other charges against appellant which he would file away if the jury should return a verdict of five years' imprisonment. . . . [T]he jury was 'directed' by

-12-

the attorney and 'permitted' by the Court to return to their room and 'reconsider their verdict.' This they did, and made return as follows: 'We the jury, after hearing other charges brought to our knowledge against the defendant by two Commonwealth's Attorneys, do reconsider our verdict and fix the penalty at five years in the penitentiary.'

*Id*. at 865. Upon review, it was determined that the trial court could not require the jury to reconsider its verdict, other than for the purpose of formal correction, after it had deliberated, returned, and read a verdict correct in form and substance. *Id*. at 866.

But this case is unlike *Jackson*. Here, the jurors realized there was a mistake in the verdict. After they notified the trial court of their mistake, the trial court permitted the jury to correct their mistake; it did not direct the jury to reconsider their verdict. And as *Bush*, *Callis*, and *Curry* indicate, while the jury remains in its presence, it *is* proper for a trial court to allow a jury to alter its verdict where the record brings into question *what* the jury's verdict *was*, and what the jury *intended* – thus indicating a defect of *form*.

The case at bar strongly parallels *Kaminski v. Bremner, Inc.*, 281 S.W.3d 298 (Ky. App. 2009). There, as soon as the verdict form was handed to the judge, the foreman asked to see the verdict form again because he believed he checked the wrong section. Thus, in open court, the foreman altered the verdict form. The altered form reflected a verdict in favor of Bremner. The trial judge

then polled the jury. Kaminski's counsel moved for a mistrial arguing the verdict form was irregular on its face because the foreman had changed the form in open court, and two jurors appeared confused when asked how they voted. The trial court denied Kaminski's motion for a mistrial; however, it sent the jury back to resume its deliberations with a clean verdict form. 281 S.W.3d at 301-02. The jury deliberated for approximately two minutes and again returned a verdict in favor of Bremner. The trial court polled the jury again, and the jurors confirmed their votes. Kaminski again moved for a mistrial, which the trial court denied. *Id*. at 303.

In concluding that the trial court did not err in denying Kaminski's motion for a mistrial, this Court noted that "altering a verdict form in open court is not automatic grounds for reversal and a new trial." *Id*. at 304. This Court further concluded that, if it were to reverse and send the matter back for a new trial, it "might be permitting a possible distortion of the true verdict and in effect might be providing Kaminski a second day in court after the matter has been fully litigated and finally decided." *Id*. at 305.

As in *Kaminski* and *Bush*, the error in the verdict in this case was one of form. Jurors almost immediately notified the trial court on the record – well before being discharged or rendering their complete verdict – that their verdict regarding Instruction No. 2 was incorrect and that it did not reflect the jury's

intent. Thus, it was proper for the trial court to allow the jury to correct the verdict.[6]

With that said, the remaining points King raises in this appeal lack merit. We turn to his contention that the jury's "verdict was complete as to [Instruction No. 2] and the jury should have been discharged and relieved from that portion of the case pursuant to KRS 29A.320(3)(f) and from any further deliberation on that issue or any activity subsequent to the return by the jury on Instruction No. 3."

But, nothing in KRS 29A.320[7] provides that polling must be deemed complete upon the jury's return of *part* of a verdict, or, that upon returning part of

---

[6] For parity of reasoning, *see Buchanan v. Commonwealth*, 399 S.W.3d 436 (Ky. 2012).

[7] In full, KRS 29A.320, which governs the duty of a jury after submission, the causes for discharging a jury, and the procedure for rendering a verdict, provides as follows:

> (1) When the case is finally submitted to the jury, they shall retire for deliberation. When they retire, they shall be kept together in some convenient place, under the charge of an officer, until they agree upon a verdict or are discharged by the court, subject to the Supreme Court rules permitting them to separate temporarily at night and for their meals. The officer having them under his charge shall not allow any communications to be made to them, nor make any himself, except to ask them if they have agreed upon their verdict, unless by order of the court; and he shall not, before their verdict is rendered, communicate to any person the state of their deliberations, or the verdict agreed upon.
>
> (2) (a) The jury may be discharged by the court on account of the sickness of a juror, or other accident, calamity or circumstance requiring their discharge; or, by consent of both parties; or, after they have been kept together until it satisfactorily appears that there is no probability of their agreeing.

-15-

a verdict, the jury is *partially* discharged. Indeed, as discussed above, our courts have held that a jury can change the form and substance of a verdict to coincide with its intention so long as the jury has not yet left the presence of the trial court. Moreover, "the trial court controls the manner of polling and, so long as it is designed to confirm whether jurors assented to the verdict as announced, it is permissible." *Kaminski*, 281 S.W.3d at 306. King's interpretation of this statute would thwart its purpose, which is to ensure that the announced verdict is supported by the individual jury members. Conversely, the purpose of the statute

---

(b) Cases in which the jury are discharged without making a verdict shall be tried again at such time as the court may direct.

(3) The procedure for rendering the verdict shall be:

(a) When the jury have agreed on their verdict, the verdict shall be written and signed by the foreman.

(b) When a verdict is rendered by less than the whole jury, it shall be signed by all the jurors who agree to it.

(c) The foreman shall hand the verdict to the judge who shall read the verdict and then make inquiry of the jury as to whether it is their verdict.

(d) When the verdict is announced either party may require that the jury be polled, which is done by the judge asking each juror if it is his verdict.

(e) If more than the number of jurors required by KRS 29A.280, as appropriate to the type of case being tried, answers in the negative, the jury must be sent out for further deliberation.

(f) If no disagreement is expressed or, in an appropriate case, an insufficient number disagree, the verdict is complete and the jury shall be discharged from the case.

-16-

is furthered by allowing a jury to resume deliberations when the record indicates that the jury might be confused.

With respect to the six additional issues King enumerated in his CR 59.05 motion and again on appeal, he classifies the first five of them on page seven of his appellate brief as "technical" violations of KRS 29A.320. But, he cites no authority indicating those "technical" violations could warrant changing his award of compensatory damages from $3,856.51 to $10,000. Nor, for that matter, have we uncovered authority indicating any such "technical" violation would otherwise amount to more than harmless error. *See* CR 61.01. Lastly, with respect to his sixth enumerated issue, we remind King that his award was not *reduced* by the jury. Because it was proper for the jury to correct its verdict, he was never actually awarded $10,000. For parity of reasoning, see *Buchanan*, 399 S.W.3d at 441 ("Buchanan also argues that the alterations to the jury verdict resulted in a double jeopardy violation. Because it was proper for the jury to correct its verdict, Buchanan was not acquitted of first-degree assault and then subsequently found guilty of that same offense.").

We have reviewed the breadth of King's arguments, none of which indicates reversible error occurred. We therefore AFFIRM.

ALL CONCUR.


BRIEF FOR APPELLANT:                    BRIEF FOR APPELLEE:

Theodore H. Lavit                       Ephraim W. Helton
Cameron C. Griffith                     Danville, Kentucky
Lebanon, Kentucky