RENDERED: NOVEMBER 8, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0412-MR

THE ELK HORN COAL
COMPANY, LLC                                                    APPELLANT


|       | APPEAL FROM LETCHER CIRCUIT COURT |
|-------|-----------------------------------|
| v.    | HONORABLE JAMES W. CRAFT, II, JUDGE |
|       | ACTION NO. 19-CI-00169            |


DEANE MINING, LLC; KIRK
TAYLOR; MARK JENSEN; AND
THOMAS M. SUAVE                                                  APPELLEES

AND

NO. 2023-CA-0423-MR

DEANE MINING, LLC                                               APPELLANT


|       | APPEAL FROM LETCHER CIRCUIT COURT |
|-------|-----------------------------------|
| v.    | HONORABLE JAMES W. CRAFT, II, JUDGE |
|       | ACTION NO. 19-CI-00169            |


THE ELK HORN COAL
COMPANY, LLC                                                    APPELLEE

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE:  CETRULO, LAMBERT, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  The Elk Horn Coal Company, LLC, (Elk Horn) brings Appeal
No. 2023-CA-0412-MR from a February 17, 2023, Trial Order and Judgment; a
March 10, 2023, Order; and a March 14, 2023, Amended Judgment and Order of
the Letcher Circuit Court awarding Elk Horn $4,251,153 in damages for Deane
Mining, LLC's, (Deane Mining) trespass and mining of coal owned by Elk Horn.
Deane Mining, Kirk Taylor, Mark Jensen, and Thomas M. Suave bring Appeal No.
2023-CA-0423-MR from the same orders and judgments.  We affirm Appeal No.
2023-CA-0412-MR and Appeal No. 2023-CA-0423-MR.

In September 2017, Elk Horn and Deane Mining entered into a lease
agreement, wherein Deane Mining was given the right to mine Elk Horn Number 3
coal seam in Letcher County.[1]  In exchange, Deane Mining was to pay certain fees
and royalties to Elk Horn based on the coal mined under the lease.

Beginning in August 2018, Deane Mining failed to pay the required
fees and royalties per the lease agreement.  As a result, Elk Horn sent Deane
Mining notices of default and eventually notices of termination of the lease.

---

[1] The lease agreement was amended on April 20, 2018.

Nonetheless, Deane Mining continued to mine coal and did not terminate its mining operations.

Thereafter, on July 12, 2019, Elk Horn filed a petition for declaration of rights in the Fayette Circuit Court. In the petition, Elk Horn merely sought the court's declaration that Deane Mining defaulted under the terms of the lease and that Elk Horn effectively terminated the lease on September 11, 2018. Elk Horn sought no damages for breach of the lease or injunctive relief. On November 21, 2019, the circuit court granted summary judgment and determined that the lease agreement was properly terminated on September 11, 2018, by Elk Horn. Deane Mining appealed to the Kentucky Court of Appeals, and this Court affirmed the summary judgment in *Deane Mining, LLC v. Elk Horn Coal Company, LLC*, No. 2019-CA-1922-MR, 2021 WL 1932727 (Ky. App. May 14, 2021).

Elk Horn also filed a complaint in the Letcher Circuit Court against Deane Mining, Mark Jensen, Thomas M. Suave, and Kirk Taylor on June 13, 2019. In the complaint, Jensen was identified as Deane Mining's Chief Executive Officer, Suave as President, and Taylor as Chief Financial Officer. Elk Horn alleged that Deane Mining, Jensen, Suave, and Taylor committed the tort of trespass by continuing to mine coal after the termination of the lease September 11, 2018. Elk Horn claimed that Deane Mining, Jensen, Suave, and Taylor acted "as part of a common plan or scheme" to commit the intentional trespass. June 13,

2019, Complaint at 7. Deane Mining, Jensen, Suave, and Taylor answered and denied the claims.

Eventually, the parties stipulated that from September 11, 2018,[2] to March 31, 2019, (First Period) Deane Mining paid royalties to Elk Horn for the coal mined from the property. During this First Period, the parties stipulated that 102,000.42 tons of coal was mined and sold for $6,078,459. The parties further stipulated that from April 2019 to August 31, 2019, (Second Period) Deane Mining mined 68,283.03 tons of coal but made no royalty payments to Elk Horn. During the Second Period, Deane Mining sold the coal mined for $4,251,153, and the parties agreed that its sale price reflected the fair market value of the mined coal.

The case was tried by a jury over two days. After presentation of the evidence, Jensen, Suave, and Taylor moved for a directed verdict claiming that they had acted within the scope of their employment and were not liable for Deane Mining's alleged trespass on Elk Horn's coal properties per Kentucky Revised Statutes (KRS) 275.150. The trial court granted the motion for directed verdict and dismissed the claims against Jensen, Suave, and Taylor.

The jury was instructed to separately find whether Deane Mining was an innocent or willful trespasser on Elk Horn's property when it mined the coal

---

[2] September 11, 2018, was the date that The Elk Horn Coal Company, LLC, terminated the lease with Deane Mining, LLC.

during the First Period and when it mined the coal during the Second Period. The jury was also instructed upon damages.

After deliberating, the jury indicated that it had reached a verdict. The trial judge read the verdict. The jury found that Deane Mining was an innocent trespasser when it mined coal during the First Period. Relevant thereto, in Verdict Form B, the jury was asked to award Elk Horn an amount that would fairly and reasonably compensate it for the trespass and mining of coal that occurred during the First Period. Specifically, the jury was instructed that the fair market value of the coal removed by Deane Mining during the First Period was $6,078,459 and then the jury was to determine the total amount of mining expenses incurred by Deane Mining. The jury found $348,541.62 in mining expenses were incurred, resulting initially in an award of approximately $5,700,000 to Elk Horn. The jury also found that Deane Mining was a willful trespasser when it mined coal during the Second Period. As Deane Mining willfully trespassed during the Second Period, and had made no royalty payments, Elk Horn was awarded $4,251,153, the stipulated fair market value of the mined coal.

Thereupon, counsel requested that the jury be polled. Upon polling the jury, it became apparent that nine jurors did not assent to the verdict contained in Verdict Form B, wherein mining expenses incurred by Deane Mining during the First Period were found to be $348,541.62. During the polling, it was clear that the

jury did not intend to award Elk Horn over $5,000,000 for the coal mined during the First Period.

After polling the jury, the circuit court amended Verdict Form B by including the following:

> (c) The amount awarded to Elkhorn Coal Company, LLC, was $_____. $6,078,459.00 minus the amount you determined was reasonable and necessary mining expenses incurred by Deane Mining for extracting and loading the coal for shipment.

The court sent the jury back to deliberate only upon Verdict Form B, and the jury returned a verdict finding the total amount of expenses ($6,078,459) incurred by Deane Mining equaled the fair market value ($6,078,459) of the coal mined during the First Period, thus resulting in no damages awarded to Elk Horn during the First Period.

Elk Horn filed a notice of appeal (Appeal No. 2023-CA-0412-MR) from the February 17, 2023, Trial Order and Judgment, March 10, 2023, Order, and March 14, 2023, Amended Judgment and Order. Deane Mining filed a notice of appeal (Appeal No. 2023-CA-0423-MR) also from the February 17, 2023, Trial Order and Judgment, March 10, 2023, Order, and March 14, 2023, Amended Judgment and Order. Upon motion to consolidate the appeals, the Court of Appeals denied the motion but ordered that the appeals would be heard together per Kentucky Rules of Appellate Procedure 2(G).

-6-

We shall initially address Appeal No. 2023-CA-0412-MR and thereafter Appeal No. 2023-CA-0423-MR.

## APPEAL NO. 2023-CA-0412-MR

Elk Horn initially contends in this appeal that the trial court erroneously granted a directed verdict dismissing the claims of trespass against Jensen, Suave, and Taylor. Elk Horn argues that Jensen, Suave, and Taylor had the ability and authority to stop mining operations at Deane Mining. Elk Horn points out that Jensen, Suave, and Taylor knew of the default notices and termination notices per the lease agreement sent by Elk Horn. In particular, Elk Horn alleges that Jensen, Suave, and Taylor did not stop mining operations at Deane Mining after receiving the termination notice from Elk Horn on September 11, 2018, and thereby committed the tort of trespass. Elk Horn asserts that Jensen, Suave, and Taylor should not be shielded from personal liability simply because they were officers of Deane Mining, a limited liability company. Elk Horn maintains that the trial court erroneously utilized KRS 275.150 to shield Jensen, Suave, and Taylor from personal liability, as subsection (3) clearly provides that an agent or employee is liable for his or her own negligence, misconduct, or wrongful acts.

The Kentucky Supreme Court has recently set forth the standard when considering a motion for a directed verdict:

> We have previously explained that "a motion for directed verdict . . . should be granted only if 'there is a

complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable minds could differ.'" *Jewish Hosp. & St. Mary's Healthcare, Inc. v. House*, 563 S.W.3d 626, 632 (Ky. 2018) (quoting *Morales v. American Honda Motor Co., Inc.*, 151 F.3d 500, 506 (6th Cir. 1998)). When considering such a motion, the trial judge must draw all fair and reasonable inferences from the evidence in favor of the party opposing the motion. *Id.* at 630 (citing *Argotte v. Harrington*, 521 S.W.3d 550, 554 (Ky. 2017)). On appeal, the reviewing court must consider whether, under the evidence as a whole, it would be clearly unreasonable for a jury to find for the plaintiff. *Id.* (*citing Argotte*, 521 S.W.3d at 554).

*Thomas v. Univ. Med. Ctr., Inc.*, 620 S.W.3d 576, 590-91 (Ky. 2020).

The statute at issue, KRS 275.150, reads, in relevant part:

(1) Except as provided in subsection (2) of this section or as otherwise specifically set forth in other sections in this chapter, no member, manager, employee, or agent of a limited liability company, including a professional limited liability company, shall be personally liable by reason of being a member, manager, employee, or agent of the limited liability company, under a judgment, decree, or order of a court, agency, or tribunal of any type, or in any other manner, in this or any other state, or on any other basis, for a debt, obligation, or liability of the limited liability company, whether arising in contract, tort, or otherwise. The status of a person as a member, manager, employee, or agent of a limited liability company, including a professional limited liability company, shall not subject the person to personal liability for the acts or omissions, including any negligence, wrongful act, or actionable misconduct, of any other member, manager, agent, or employee of the limited liability company. That a limited liability company has a single member or a single manager is

-8-

> not a basis for setting aside the rule otherwise recited in this subsection.
>
> . . . .
>
> (3) Subsection (1) of this section shall not affect the liability of a member, manager, employee, or agent of a limited liability company for his or her own negligence, wrongful acts, or misconduct.

Under KRS 275.150(1), a member, manager, employee, or agent of a limited liability corporation is not personally liable for the debt or liability of the limited liability corporation. Additionally, under subsection (1), a member, manager, employee, or agent is not personally liable for the acts or omissions of other members, managers, employees, or agents of the limited liability corporation. And, KRS 275.150(3) clarifies that subsection (1) should not be read to affect the liability of such a member, manager, employee, or agent for his own negligence, wrongful act, or misconduct. Therefore, a member, manager, employee, or agent of a limited liability corporation is not immune from personal liability simply because he was acting as a member, manager, employee, or agent of such limited liability corporation at the time of his misconduct, wrongful act, or negligent conduct.[3]

---

[3] The Kentucky Supreme Court recognized this principle of law in regard to corporations in *Smith v. Isaacs*, 777 S.W.2d 912, 913-15 (Ky. 1989).

Elk Horn essentially identifies Jensen, Suave, and Taylor's wrongful act as their collective decision not to cease mining operations at Deane Mining upon and after termination of the lease agreement on September 11, 2018. At trial, Jensen testified that Deane Mining questioned whether the lease was properly terminated on September 11, 2018, by Elk Horn. In fact, Jensen believed that Deane Mining had cured the defaults under the lease and/or that Elk Horn had waived same. And, it was not until November 21, 2019, that the Fayette Circuit Court adjudicated that the lease was effectively terminated on September 11, 2018. By this time, Deane Mining had ceased its mining operations. In view of the record below, we cannot conclude that the circuit court erroneously granted a directed verdict dismissing Jensen, Suave, and Taylor. It must be remembered that the "centerpiece" of a limited liability corporation is the feature of actually limiting liability of its members and managers, as well as employees and agents. *Racing Inv. Fund 2000 v. Clay Ward Agency*, 320 S.W.3d 654, 656 (Ky. 2010). In this case, during the First Period, it would be reasonable to assume that upon the acceptance of royalty payments by Elk Horn, the lease was still in effect. And, in the Second Period, mining continued yet Elk Horn took no legal action to restrain or enjoin the mining until Deane Mining ceased operations on the property. Simply put, the evidence was insufficient to demonstrate that Jensen, Suave, or Taylor individually breached a duty owed to Elk Horn or were otherwise

personally liable for Deane Mining's trespass to mine the coal on Elk Horn's property.

Elk Horn also asserts that the "trial court erred by providing an instruction [to the jury] in the absence of any evidence to support a required finding[.]" Elk Horn's Brief at 11. In Jury Instruction No. 2, Elk Horn points out that the jury was to find whether the trespass on Elk Horn's property committed by Deane Mining was innocent or willful (the jury found innocent) and then assess damages on Verdict Form B. In Verdict Form B, Elk Horn cites to the following language as problematic:

> (b) We the Jury find the amount of mining expenses that were reasonably calculated to be beneficial and productive in extracting and loading the coal for shipment was:
>
> $6,078,459.00 (not to exceed $6,078,459.00)

Elk Horn argues that there was no evidence introduced concerning mining expenses that were reasonably calculated to be beneficial and productive to the extracting and loading of coal for shipment. Elk Horn attacks Taylor's testimony as to mining expenses as "general and unspecific." Elk Horn's Brief at 12. Additionally, Elk Horn complains that Taylor's calculated mining costs included expenses unrelated to mining coal.

In a civil action, a party is entitled to a jury instruction if there exists evidence to support same. *McAlpin v. Davis Construction, Inc.*, 332 S.W.3d 741,

-11-

744 (Ky. App. 2011). At trial, Taylor testified that mining expenses for Deane Mining exceeded $65 per ton of coal mined and that the mining operation proved to be unprofitable. In computing this amount of expense per ton mined, Taylor specified that he included many items of mining expenses, including workers' compensation insurance, electricity, roof supplies, caging, fuel, washing coal, transportation, and employees' pay and benefits. Additionally, the parties stipulated that Deane Mining paid royalties to Elk Horn for the coal mined during the First Period that were accepted by Elk Horn. Consequently, we cannot conclude that the circuit court erred by giving the jury instruction (Verdict Form B) as sufficient evidence existed as to mining expenses incurred by Deane Mining. To the extent there was an error, it was harmless as Elk Horn received and accepted royalty payments during the First Period.

## APPEAL NO. 2023-CA-0423-MR

Deane Mining contends that the circuit court erred by giving two separate jury instructions as to whether the company was an innocent or willful trespasser during two distinct periods of time. More particularly, Deane Mining points out that the circuit court instructed the jury to find whether Deane Mining was an innocent or willful trespasser when it mined coal during the First Period and then whether Deane Mining was an innocent or willful trespasser when it mined coal during the Second Period. Deane Mining argues that the paying of

-12-

royalties to Elk Horn is insufficient to justify the separate instructions. Deane Mining maintains that the payment of royalties is a relevant factor to willful/innocent trespass to coal but not the determinative factor. Deane Mining asserts that two jury instructions were prejudicial because "it suggested to the jury that the two periods of time should be treated differently." Deane Mining's Brief at 6.

As an appellate court, we review a challenge to the contents of a jury instruction *de novo*, as it presents an issue of law. *Norton Healthcare, Inc. v. Disselkamp*, 600 S.W.3d 696, 709 (Ky. 2020).

At trial, the parties stipulated that during the First Period, Deane Mining paid royalties for the coal mined and sold. During the First Period, the parties further stipulated that 102,000.42 tons of coal was mined and sold for $6,078,459. The parties also stipulated that during the Second Period, Deane Mining mined 68,283.03 tons of coal but made no royalty payments to Elk Horn. During the Second Period, Deane Mining sold the coal mined for $4,251,153, and the parties agreed that its sale price reflected the fair market value of the coal mined. On Verdict Form C, the jury concluded that this amount reflected the damages sustained by Elk Horn for the mining that occurred in the Second Period, during Deane Mining's willful trespass.

The circuit court's decision to give two jury instructions was plainly based upon the parties' stipulations. In those stipulations, the tons of coal mined and the value of such mined coal was divided into two time periods – First Period and Second Period. During the First Period, Deane Mining paid royalties to Elk Horn; however, during the Second Period, Deane Mining paid no royalties to Elk Horn. In accordance with the parties' stipulations, the circuit court, likewise, utilized the same two time periods in the jury instructions – First Period and Second Period. The use of these two time periods did not render the jury instructions incorrect as a matter of law, and no discernable prejudice resulted therefrom. We, therefore, hold that the circuit court did not err in giving the two jury instructions.

Deane Mining next asserts that the jury instructions were confusing and misleading as evidenced by the jurors' comments during polling. More particularly, Deane Mining argues:

> After the jury began deliberating, the jury sent out two separate questions for the Court to answer, one of which specifically addressed the jury instructions on calculation of damages. After more deliberations, the jury indicated that it had a verdict and produced Verdict Form B, which would have resulted in a verdict in favor of Elk Horn for the period of September of 2018 through March of 2019 in the amount of approximately $5.7 million dollars. However, when the Court polled the jury, it became clear that an award of $5.7 million dollars to Elk Horn was not the desired verdict of the jury under the subject instruction. It later became clear that there were not 9

-14-

> people who agreed to award Elk Horn the $348,541.62
> that was inserted on the subject Verdict Form B. After
> modifications to Verdict Form B and additional
> deliberations, the jury then returned with a new Verdict
> Form B, which resulted in $0 dollars being awarded to
> Elk Horn under Instruction No. 2. Even when the Court
> polled the jury on its verdict regarding Instruction No. 3,
> it was less than clear that 9 jurors had actually agreed that
> Deane was a willful trespasser for the period referenced
> in the instruction given by the Court.

Deane Mining's Brief at 7 (citations omitted). Deane Mining maintains that due to such confusion by the jury the entire verdict should be set aside.

The record on appeal reveals that while polling the jury, it became clear that nine jurors did not assent to the verdict contained in Verdict Form B. As a consequence of the polling, the circuit court amended Verdict Form B and sent the jury back to deliberate. The jury eventually reached a verdict upon Verdict Form B to which nine jurors assented.

The circuit court properly exercised its discretion to send the jury back to deliberate after polling revealed less than nine jurors had assented to the original Verdict Form B. *Kaminski v. Bremner, Inc.*, 281 S.W.3d 298, 306 (Ky. App. 2009) (holding that the circuit court "controls the manner of polling and, so long as it is designed to confirm whether jurors assented to the verdict as announced, it is permissible"). After sending the jury back for further deliberations, the jury returned a verdict on the amended Verdict Form B. Nine jurors assented to this verdict. This amended verdict clearly was in Deane

-15-

Mining's favor, awarding a judgment of $0 damage. Based on our review, any confusion surrounding Verdict Form B was cured by the modification of same by the circuit court, by the jury's further deliberations, and by the eventual verdict assented to by nine jurors. *Kaminski*, 281 S.W.3d at 305 (recognizing that after polling of the jury revealed that nine jurors did not assent to the verdict, any irregularity or inconsistency in the proceeding was sanitized by sending the jury back for further deliberations). Thus, we cannot conclude that reversible error occurred.

For the foregoing, we affirm Appeal No. 2023-CA-0412-MR and Appeal No. 2023-CA-0423-MR.

ALL CONCUR.

| BRIEFS FOR APPELLANT THE ELK HORN COAL COMPANY, LLC: | BRIEF FOR APPELLEE DEANE MINING, LLC, KIRK TAYLOR, MARK JENSEN, AND THOMAS M. SUAVE: |
|---|---|
| Robert J. Patton Prestonsburg, Kentucky | Billy R. Shelton Lexington, Kentucky |